# NEW YORK STORE MERCANTILE COMPANY v. THURMOND et al., Appellants.

### Division One, February 15, 1905.

1. **Deed of Trust: Agreement of Mortgagor: Setting Aside Sale.** An agreement of the maker of a second deed of trust to notify the beneficiary of his inability to pay the first mortgage lien after it became due and demand of payment, to which neither the beneficiary nor the trustee of the first deed of trust was in any sense a party and of which they had no knowledge prior to a foreclosure sale thereunder, in no wise affects the legality or bona fides of that sale, and is no ground for setting it aside.

2. ————: **Sale: Unusual Hour.** A trustee's sale of land made between ten and twelve o'clock in the forenoon, within the hours mentioned in the deed of trust, in a county where it was customary to sell under deeds of trust before the noon hour, was not at an unusual hour.

3. ————: ————: **Setting Aside.** Where the sale was advertised as the deed of trust required and the land was sold within the hours mentioned therein, and was bought in by the beneficiary who in a few hours afterwards sold it to the son-in-law of the mortgagor for an amount equal to the debt, expenses, and fifty dollars bonus, the money being furnished by said purchaser and the land being worth much more than he paid for it, and there being nothing to show any collusion between the beneficiary, the purchaser and the mortgagor to thus place the title in the son-in-law and thereby cut out a second deed of trust, the sale will not be set aside, on a showing that there was an agreement on the part of the mortgagor to notify the holder of the second deed of trust when the first deed of trust was to be foreclosed, which he failed to keep, neither the beneficiary of the first deed of trust, the trustee, nor the son-in-law having any knowledge of such agreement.

4. ————: ————: **After Judgment and Execution: Appeal.** A sale by the plaintiff under a mortgage with power of sale, by himself as mortgagee, after he had recovered a judgment setting aside a sale under a prior deed of trust and declaring the purchaser thereat to hold the title as trustee for the maker thereof, and giving the plaintiff a lien on the land for the amount of his debt and ordering the sheriff to sell the land to satisfy the same, is in no sense a satisfaction of that judgment. The judgment directed a judicial sale by the sheriff, after having merged

the plaintiff's mortgage into the judgment and lien, and the mortgagee's sale was under his mortgage in pursuance to the power by it conferred on him.

5. ———: ———: ———: Satisfaction: Appeal. The rule of law to the effect that where a party has recovered judgment and accepted satisfaction thereof he can not afterwards sue out a writ of error or take an appeal to reverse the judgment, does not bar an appellant who has recovered no judgment and who has neither accepted nor received any benefit therefrom from prosecuting his appeal.

6. APPEAL: Bond: Insufficient Amount. The appellant's right to an appeal does not depend on his giving a bond or on the bond's being double the amount of the judgment against him. The purpose of the bond is to stay execution pending appeal.

7. ———: Abstract: Equity Case. The abstract in a suit to set aside a sale under a deed of trust, containing the pleadings, the deed of trust, judgment, motions for new trial and in arrest, the testimony, partly in narrative form and partly by question and answer, is no fuller than required in such case, and is a sufficient compliance with the statutes and the rules of the court where the appeal is taken by a certificate of judgment and printed abstract.

8. ———: Service of Brief. The case was set for hearing on January 3d, and the printer who printed appellant's brief, at his direction, mailed to respondent's counsel a copy of his brief on November 30th, which counsel say they did not receive until December 6th. All the briefs, motions and notices in the case were served by both parties in the same way. Held, that the brief was mailed in ample time to have reached respondent's counsel thirty days before the case was set for hearing, and the ends of justice would not be subserved by penalizing the appellant by dismissing his appeal.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort*, Judge.

REVERSED.

*J. P. Tribble* and *Ely & Kelso* for appellants.

(1) The court erred in permitting witness Keaton to testify, over defendant's objection, to the fact that Thurmond had agreed with him, Keaton, that he would notify him in case Shelton, the beneficiary under the

first deed of trust, should insist on the collection of his debt. Such evidence was not competent as against either of the other defendants. They were not shown to have been present when this agreement was made. This testimony was not competent for any purpose. Hardwicke v. Hamilton, 121 Mo. 475; Shoe Co. v. Casebeer, 53 Mo. App. 640. (2) The court also erred in permitting the letters marked as exhibits A, B, C and D to be read in evidence, for the same reason. They are wholly incompetent and had no tendency to prove or disprove any issue joined in the cause. Further, there was no proof connecting either of the defendants with these letters, even if they had been competent as against Thurmond. Hardwicke v. Hamilton, 121 Mo. 475; Shoe Co. v. Casebeer, 53 Mo. App. 643. (3) The finding and decree of the court is not supported by the pleadings. There are no allegations in the pleadings that defendant Gibson, when he bought the land from Shelton, after the foreclosure sale, acted for the defendant Thurmond; that he bought it with Thurmond's means, or as trustee for him. There is no allegation that Gibson acted for any other person than himself in making the purchase. For this reason the judgment should be reversed as not authorized by the pleadings. Holborn v. Naughton, 60 Mo. App. 100; Needles v. Ford, 167 Mo. 495. Had such allegation been made, there was no evidence whatever to sustain it. (4) The finding and judgment of the court are not supported by the evidence in the cause: (a) There was no evidence of fraud in the sale of the land under the Shelton deed of trust, on the part of any person connected with the transaction. Fraud, when relied upon as a ground of relief, must be conclusively proven, and can never be assumed. Hardwicke v. Hamilton, 121 Mo. 465; Shoe Co. v. Casebeer, 53 Mo. App. 640; Robinson v. Dryden, 118 Mo. 534; Keiser v. Gammon, 95 Mo. 317; Ridge v. Greenwell, 53 Mo. App. 479. (b) And the mere fact that suspicious circumstances may

be connected with the sale is not enough; proof of the fraud must be clearly made, it cannot be assumed. Hardwicke v. Hamilton, 121 Mo. 474; Keiser v. Gammon, 95 Mo. 317. (c) When the facts offered in evidence may as well consist with an honest as with a dishonest purpose, the presumption is against the party alleging the fraud. Ridge v. Greenwell, 53 Mo. App. 483; Robinson v. Dryden, 118 Mo. 534. (d) The fact that Thurmond and Gibson are related, and that Thurmond is insolvent, are not sufficient by themselves to establish fraud. Robinson v. Dryden, 118 Mo. 534. (e) It is not sufficient that fraud on the part of Thurmond alone may be shown; if any fraud was in fact shown, it must appear that Gibson not only knew of the fraud, if such fraud has been established, but he must be shown to have participated in it. (f) The fact that the consideration expressed in the deed from Shelton to Gibson is the exact amount paid, and which plaintiff claims to be inadequate, is a circumstance arguing strongly in favor of the bona fides of the transaction. If the transaction had been fraudulent, the consideration expressed in the face of the deed would, in all probabilities, have been equal to, or even greater, than the full cash value of the land. Robinson v. Dryden, 118 Mo. 534. (g) All the testimony in the case shows positively that there was no fraud committed or intended by these parties. While it is true that, in such cases as this, "direct testimony may be overcome by impeaching circumstances," such criminating facts, however, must be of a character to lead a reasonable and fair-minded person to infer a fraudulent and dishonest purpose, in spite of the sworn statements of the witnesses. Ridge v. Greenwall, 53 Mo. App. 470. (5) The court found that Shelton was free from any fraudulent motive in foreclosing his deed of trust and in purchasing the lands at that sale. From this finding plaintiff does not dissent. Such being the case, Shelton had a perfect right to dispose of his purchase to whom-

soever would buy it without reference to the fraud of any other person. Such sale will be upheld even if it had been proved that Gibson was guilty of fraud (but no such proof was offered) and the purchaser would take a good title. Shelton's right to sell was subject to no limitations whatever. Funkhouser v. Lay, 78 Mo. 458; Launay v. Poupenez, 35 Mo. 71; Halso v. Halso, 8 Mo. 308; Craig v. Zimmerman, 87 Mo. 475; Crow v. Andrews, 24 Mo. App. 159. (6) Shelton's right to foreclose the first deed of trust accrued on the day his debt became due and default was made in the payment thereof. He then had the right to cause the land to be advertised and sold by the trustee according to the terms of the trust deed. The notice of sale was published in a newspaper as required by the terms of the deed of trust. In the absence of actual fraud this is sufficient. Hardwicke v. Hamilton, 121 Mo. 475.

*C. L. Keaton* for respondent.

(1) The judgment and decree of the court adjudging that the land described in plaintiff's mortgage was subject to the lien of the mortgage notwithstanding the purchase of Gibson, was self-enforcing, and the foreclosure under the deed of trust or mortgage was the proper execution of the judgment and decree. State ex rel. v. Klein, 137 Mo. 679; Aull v. Trust Co., 149 Mo. 15; Medart v. Baker Mfg. Co., 51 Mo. App. 21. (2) The appeal should be dismissed on affidavit of satisfaction of judgment. Waddingham v. Waddingham, 27 Mo. App. 609. (3) There was no supersedeas when the land was sold. The appeal bond would act as a supersedeas only after the approval of the appeal bond. R. S. 1899, sec. 809; State ex rel. v. Dillon, 98 Mo. 93. (4) The simple filing of a motion for new trial did not stay judgment. R. S. 1899, sec. 3151; Ex parte Craig, 130 Mo. 594; Ex parte Millett,

37 Mo. App. 82; State ex rel. v. Field, 37 Mo. App. 99. (5) Defendants fixed the amount of the bond at their peril, and it does not supersede execution. R. S. 1899, sec. 809; State ex rel. v. Dillon, 31 Mo. App. 535; State ex rel. v. Woodson, 28 Mo. 513; Thomas v. Ins. Co., 89 Mo. App. 15. (6) This appeal should be dismissed for failure of appellants to make and file abstract of the record and especially of the evidence. The bill of exceptions is simply printed in full and not abstracted at all. Brand v. Cannon, 118 Mo. 598; Whitehead v. Railroad, 176 Mo. 480; rule 13 of this court. (7) There is no merit in the objection to the evidence of witness Keaton, testifying to an independent agreement between him as against defendant Thurmond. The evidence is perfectly competent; besides, there was no valid objection made at the time. Short v. Taylor, 137 Mo. 528; Roe v. Bank of Versailles, 167 Mo. 427. (8) "Collusion or fraud is seldom susceptible of positive or direct proof, and in determining whether or not it exists the chancellor has the right and it is his duty to consider the entire surroundings of the transaction, the relation and conduct of the parties; and then make such reasonable inferences as all the facts warrant." New. Eng. L. & T. Co. v. Browne, 177 Mo. 422. (9) As to the third point of defendants' brief, it is clearly without merit. Witness Pool clearly shows from the letters of the parties, Thurmond and Gibson, that Gibson was simply managing and renting the property to get his money back that he had paid out to Shelton, and then the land was to be turned over or back to defendant Thurmond, shorn of all liens or liabilities from defendant Thurmond's debts, and defendant Gibson says, himself, that he proposed to turn the lot back to Thurmond or allow him to redeem it and they were trying to sell the land and said Pool says that he had been offered a thousand dollars in cash for it, and it is very clear that if he had sold it for a thousand dollars Gibson would have gotten about four hundred

dollars and Thurmond about six hundred and plaintiff nothing.    New England L. & T. Co. v. Browne, 177 Mo. 412.

MARSHALL, J.—This is a bill in equity to set aside for fraud a deed from defendant Jones, as trustee, to defendant Shelton, and also a deed from said Shelton to defendant Gibson, to the north half of the northwest quarter of section twenty, in township sixteen, range seven, in Dunklin county, and to have a deed of trust from defendant Thurmond to the plaintiff, on said land, and other lands, declared a lien on said land, superior to defendant's claim thereto, and to have plaintiff's deed of trust aforesaid foreclosed and the land sold to satisfy the plaintiff's lien.

The petition alleges that on December 14, 1896, the defendant Thurmond was the owner of the land, and that on that day he gave a deed of trust thereon to defendant Jones, as trustee, to secure to defendant Shelton a note for three hundred and seventy-five dollars, which deed was duly recorded in said Dunklin county; that afterwards on September 25, 1897, said Thurmond executed to plaintiff a second deed of trust on the land, to secure a note for $463.73, which was also duly recorded; that at the time Thurmond gave plaintiff said deed of trust, he promised to protect plaintiff's interest by paying off the first deed of trust, and in the event Shelton should press the first deed of trust and he, Thurmond, was unable to pay it, he would notify the plaintiff so that it could protect itself in the premises and that plaintiff believed and relied on Thurmond's said promise and he failed to keep the same; that the land was of sufficient value to pay both of said debts and was good security therefor; that in December, 1899, and January, 1900, Thurmond, Shelton, and the defendant Gibson, "colluded together with intent to hinder, delay and defraud the creditors of said Thurmond, and especially the plaintiff, of its lawful action,

forfeiture, debt, demand and lien, and did cause the defendant Ligon Jones to advertise said property and real estate for sale under the deed of trust of said W. F. Shelton without advising this plaintiff of their proceedings in that behalf and plaintiff had no actual notice or knowledge thereof, and did, afterward, on the eighth day of January, 1900, at an unusual hour of the day, with intent to suppress bidding and prevent competition in bidding in that behalf and to get title to said real estate free and shorn of plaintiff's lien and demand,'' sell the land to Shelton for the sum of one hundred dollars, when it was fairly worth one thousand dollars, and immediately thereafter Shelton sold it to Gibson, by a general warranty deed, for three hundred and eighty-four dollars and twenty-seven cents, and that Gibson is a son-in-law of Thurmond and held a confidential relation to him; that plaintiff's debt is due and unsecured, except by the second deed of trust, and that Thurmond is wholly insolvent; that immediately thereafter Thurmond and Gibson left the State, so that the ordinary process of law could not be served upon them; that upon being informed of the premises, plaintiff demanded of Thurmond, Shelton and Gibson to be allowed to redeem the land by the payment of the amount due Shelton, so that it could be sold at a fair price, but defendants refused so to do. The prayer of the petition is that the sale under the first deed of trust and the trustee's deed to Shelton, and the deed of Shelton to Gibson, be declared fraudulent and set aside, and that plaintiff's claim and lien be declared superior to the claims and liens of defendant ''by reason of the undue advantage sought to be accomplished by the means and in the manner herein mentioned; that plaintiff's mortgage and deed of trust be fully foreclosed and carried into full force and effect; that said real estate be sold under the order and decree of this court, and that plaintiff's demand and

costs be first fully paid and satisfied, and the remainder, if any, may be paid over to the defendants according to their rights," and for further relief.

The answer of the defendant Gibson is a general denial, coupled with the plea that he had no knowledge or notice of plaintiff's agreements with Thurmond, if there were any such agreements, and had nothing to do with the foreclosure of the Shelton deed of trust, and did not know either Shelton or Jones prior to the sale under the deed of trust, and had no conversation with either of them prior to said time; that he is an innocent, bona fide purchaser of the land from Shelton, for a valuable consideration.

The other defendants answered jointly, in the shape of a general denial, with a special plea that the sale of the land was legally and fairly made, and that the land is now the property of defendant Gibson.

The decree of the court set out the first deed of trust to Shelton, and the second deed of trust to plaintiff, and then finds that at the time Thurmond gave the second deed of trust to plaintiff, he, Thurmond, *"undertook to protect the interests of plaintiff under its said deed of trust or fully advise plaintiff of any demand which he could not meet or a foreclosure of said deed of trust to W. F. Shelton in the premises.* And that afterward the said Ligon Jones on the eighth day of January, 1900, having duly advertised said real estate for sale under said first deed of trust to W. F. Shelton, sold the same to W. F. Shelton, of all of which plaintiff had no actual notice of the proceedings in that behalf, and that said J. A. Thurmond wholly failed to protect plaintiff's interests or to advise plaintiff of said proceedings and sale, but procured defendant J. T. Gibson, his son-in-law, to attend the sale under said deed of trust on the eighth day of January, 1900, *and to pay off the demand due said W. F. Shelton on the day of the sale of said premises, and buy in the same and take a deed therefor in his own name from the*

*said W. F. Shelton, the beneficiary in said deed of trust; and the court doth find that the said purchase by the said J. T. Gibson was for and in behalf of said J. A. Thurmond, and the said J. T. Gibson now holds the said real estate in trust for the said J. A. Thurmond."*

The decree then finds that Thurmond is indebted to the plaintiff in the sum of $517.83 and declares it to be a lien on the land by virtue of the second deed of trust "and under this judgment," orders an execution to issue and the land to be sold, and if it does not bring enough to satisfy plaintiff's debt that the execution be levied upon the other goods, chattels and real estate of Thurmond. The decree then finds in favor of the defendants Shelton and Jones. From this decree the defendants Thurmond and Gibson appealed.

As this is a suit in equity, the facts will be stated and discussed in the course of the opinion.

The case stated in the petition is, first, that when Thurmond gave the second deed of trust to the plaintiff he promised to protect the plaintiff by paying the first deed of trust, or, if he was unable to do so, that he would notify plaintiff of any proceeding to foreclose it so that it could protect itself, and that Thurmond failed to do so; and second, that Thurmond, Shelton and Gibson colluded to hinder, delay and defraud Thurmond's creditors, and especially the plaintiff, by causing the first deed of trust to be foreclosed at an unusual hour of the day, with intent to suppress bidding and prevent competition in bidding and thereby to get the land freed from the plaintiff's lien, and that, in pursuance thereof, they caused the first deed of trust to be foreclosed, and Shelton became the purchaser for one hundred dollars, when the land was fully worth one thousand dollars, and that Shelton immediately conveyed the land to Gibson, by a general warranty deed, for $384.27, and that Gibson is a son-in-law of Thurmond, and held a confidential relation to him; and that immediately thereafter Thurmond and

Gibson left the State of Missouri, so that the ordinary process of law could not be served upon them.

And of these in their order,

## I.

The first predicate of the petition is sustained by the evidence. The plaintiff's travelling agent and Thurmond both testified that the latter promised, at the time he gave plaintiff the second deed of trust, to pay off the first deed of trust, or, if unable to do so, to notify plaintiff of any foreclosure proceedings thereunder so that the plaintiff could protect itself, and that he failed to do so.

But neither this agreement nor this failure affects this case in the slightest degree. There is no allegation in the petition that Jones the trustee, or Shelton the beneficiary under the first deed of trust, or Gibson the grantee of Shelton, was a party to any such agreement, or had any notice thereof, and there is not an iota of testimony in the record that such was the fact, but, on the contrary, the uncontradicted testimony is exactly the other way.

The alleged agreement was made long after the first deed of trust was executed and after Shelton's rights thereunder were fully fixed and vested, and, therefore, it could have no effect upon Shelton. There was not even an attempt to show that Shelton knew anything about it before he purchased it at the foreclosure under the first deed of trust. Nothing further, therefore, need be said of this feature of the petition.

## II.

The gravamen of the second predicate of the petition is fraud and collusion between Thurmond, Shelton and Gibson, to foreclose the first deed of trust at an unusual hour, and thereby prevent competition in bidding at the sale, whereby Shelton became the purchaser at the foreclosure sale for one hundred dollars,

and the sale by him, immediately thereafter, to Gibson for $384.27, when the land was fairly worth one thousand dollars, in consequence of which the plaintiff's lien under the second deed of trust was lost.

There is not a scintilla of evidence in the record to support this charge of the petition. The plaintiff introduced the depositions of Thurmond, Gibson and Jones, and also called as a witness its travelling salesman, who had transacted the business with Thurmond, and also the present sheriff of the county and the clerk of the court, and then offered in evidence certain correspondence between plaintiff and Thurmond, and between Gibson and his agent who looked after the renting of this and other property belonging to Gibson, after Gibson purchased from Shelton. So far from showing that the sale under the Shelton deed of trust was had at an unusual hour, the testimony was that it was sold between the hours specified in the deed of trust; that it was between ten and twelve o'clock in the morning, and that it was customary in that county to sell under deeds of trust before the noon hour, and under executions in the afternoon.

Touching the charge of fraud and collusion alleged in the foreclosure of the Shelton deed of trust, the testimony offered by the plaintiff was as follows:

Jones, the trustee, said he advertised the sale and sold the property at the sole request of Shelton; that he knew nothing about the plaintiff's deed of trust or claim; that he never met Gibson until after the sale under the deed of trust, when Gibson told him he had come to bid on the land, and he told him the land was sold, and that he would have to trade with Shelton if he wanted the land; that Shelton never said anything to him about Thurmond's financial condition; that he was living at Dexter, Missouri, at the time, and went to Kennett to conduct the sale, as trustee; that he had no knowledge of any understanding or effort by either Shelton, Thurmond or Gibson, to hinder, delay or de-

feat the plaintiff, in the collection of its claim against Thurmond, in any manner whatever; that the notice of sale was published in the Dunklin County Democrat for thirty days before the sale.

Thurmond testified that at the time of the sale he was in bad health and had failed in business; that he never had any conversation with Shelton about the plaintiff's claim, but had tried to get him to give him more time in which to pay what he owed him, Shelton, but that he refused to do so; that he had met with adversity and was unable to pay and was at the mercy of his creditors, and that he was trying to look after his health, rather than his means, when the sale took place; that he had not "associated" himself with Shelton, or Jones, or Gibson, to hinder the plaintiff in the collection of its debt or to defraud it; that he did not leave Dunklin county or the State of Missouri until February 12, 1900 (the sale took place on January 8, 1900), and would not have left except for his health; that he is now living with his son-in-law Gibson, in Dyer county, Tennessee.

Gibson testified that he was thirty-nine years old; was a farmer; lived in Dyer county, Tennessee, and had never lived in Dunklin county, Missouri; that he became acquainted with the land about two years before the sale; that Thurmond wrote him from Cardwell, Missouri, that it was to be sold on January 8, 1900, and that it was a good investment, and that he was not able to buy it himself, and if he, Gibson, wanted to buy it, he would have to be there on January 8, 1900; that he did not know who was selling it, but thought it was the plaintiff, as he knew that it had a lien on it; that he did not know Shelton at the time or that he was selling it until after it was sold; that he thought it was worth from $800 to $1,000, and thought it a good investment; that he reached Kennett on the sixth of January, and made arrangements with the bank there to get the money he might need in addition to what he

had brought with him, on the morning of the sale, but in doing so was delayed, so that when he reached the courthouse, he found that the land had been sold, and that Shelton had bought it; that he had never met Shelton, and so got Thurmond to introduce him; that he bought the land from Shelton for the amount Thurmond owed him, with expenses of sale, and fifty dollars bonus; that he had enough money to pay for it less one hundred and ten dollars, which he got from the bank; that he demanded a warranty deed and Shelton gave it to him; that Shelton did not mention the plaintiff to him at all; that he had but three acquaintances in Kennett, viz., O. L. Thurmond, Trimble and Hall; that he had no prior acquaintance with Shelton; that he was not associated with Shelton or Thurmond to hinder or delay the creditors of Thurmond in any manner whatever, and did not buy the land for any such purpose, but because he thought he had a perfect right to do so; that he bought the land because he thought he could make a profit on it and for no other purpose.

The plaintiff's travelling salesman did not attempt to testify to any collusion. He said that four or five days after Shelton had sold the land to Gibson, he called on Shelton and demanded the right to redeem the land by paying what Thurmond owed Shelton, and that Shelton said he was too late and he could do nothing for him.

The correspondence between plaintiff and Thurmond affords no support whatever to the charge of the fraud and collusion alleged.

J. R. Pool, the agent for Gibson for the renting of the property after Gibson acquired it, testified that Thurmond never told him that the land was his and that Gibson was to collect the rents until he was paid back what he had paid for it, but that he had an *"impression from letters and other sources that it is a fact, however. I have no definite recollection."* He

produced one letter which he had written Gibson about renting a small house for a year at eight dollars a month, which had previously rented for twelve, and asking Gibson's consent to the arrangement, on the back of which Gibson wrote a refusal to so rent and said he wanted to sell the land and would not rent the house for a year at all. It is not necessary to notice this statement further than to say that it does not rise to the dignity of testimony. Pool's *"impressions"* derived "from letters and other sources," are mere conclusions and not evidence, and besides, the only letter he produced not only does not afford the slightest color to the "impression" alleged, but, on the contrary, negatives any such inference, for it treats the property as Gibson's and says he wants to sell it.

The defendants introduced five other letters from Gibson to his agent Pool, regarding the renting of the property, but not one of them affords any foundation for the charge of fraud and collusion or for any such "impression," but tend to show that Gibson treated and managed the property as his own, refused to rent it for any long term and said he wanted to sell it.

This was all the testimony in the case that had any bearing upon the charge of fraud and collusion. The charge, therefore, is without a particle of legal evidence to support it, unless the fact that Gibson was Thurmond's son-in-law was, of itself, evidence sufficient to make out a prima facie case of the fraud and collusion alleged, or else was enough to cast the burden of proof upon Gibson to show good faith in the transaction.

It will be noted that the charge of the petition is collusion between Thurmond, Shelton and Gibson, to defeat the plaintiff's claim, by having the foreclosure of the Shelton deed of trust at an unusual hour, so as to shut off competition in bidding. The evidence completely negatives that charge, and shows that the sale was legally and properly and openly made, after thirty

days' notice of the intended sale, duly published as the deed of trust required, and that it was held at the usual hour for such sales in that locality. So that in any event the charge was utterly disproved and the bona fides of the whole transaction clearly established.

Furthermore, the record clearly shows that Thurmond had failed in business and had no means, while Gibson was a farmer, with available means, and that the money used to purchase the land was Gibson's and not Thurmond's, money, consisting of the money Gibson brought with him from Tennessee plus the one hundred and ten dollars that he borrowed from the bank at Kennett, Missouri.

The sum of the whole matter is, that the foreclosure of the first deed of trust was legally and fairly made, Shelton acquired the land at the sale, and Gibson honestly purchased it from Shelton, and there is absolutely no evidence or remote suspicion of fraud in the matter. The plaintiff therefore utterly failed to prove the fraud alleged.

The decree of the court, however, went further than the allegations of the petition, and found that Thurmond procured Gibson "to pay off the demand due said W. F. Shelton on the day of the sale of said premises and buy in the same and take a deed therefor in his own name from the said W. F. Shelton, the beneficiary in said deed of trust; that the court doth find that the said purchase by the said J. T. Gibson was for and in behalf of said J. A. Thurmond, and the said J. T. Gibson now holds the said real estate in trust for the said J. A. Thurmond."

The decree is broader than the issues joined and tried, and in addition finds no support in the evidence. The only semblance of support afforded by the evidence is that when Gibson bought from Shelton the latter made him pay a sum equal to the amount Thurmond owed him, with the expenses of the sale, and also fifty dollars bonus. Of course Shelton would not sell the

land for less, as the land was worth at least that amount. But this did not extinguish Thurmond's debt to Shelton. The latter paid one hundred dollars for the land, and he was only obliged to credit that amount, less expenses, on Thurmond's debt, and the balance he was entitled to recover if he could. The fact that after he acquired the legal title to the land, he sold it for enough, or more, to pay what Thurmond owed him did not have any effect upon the balance Thurmond owed after deducting the proceeds of the foreclosure sale. It might be quite a persuasive moral argument in favor of Thurmond if Shelton was seeking to recover such balance, but it constitutes no legal defense or acquittance.

There is no merit in the plaintiff's case. It took a second deed of trust, and relied upon the promise of the mortgagor to pay off the first deed of trust or to notify it if he was unable to do so. He failed in his promise. The first deed of trust was legally foreclosed, and Shelton became the purchaser and sold to Gibson. The plaintiff had all the notice of the foreclosure of the first deed of trust that the law requires, and did not protect itself. The law affords him no relief. The trial court should have dismissed the bill and its judgment must be reversed.

### III.

The plaintiff, however, moves to dismiss the appeal for four reasons, to-wit: first, because the judgment was fully satisfied and executed, before the appeal was granted, by the foreclosure of the plaintiff's second deed of trust, and that the appellants have acquiesced in the judgment and accepted the benefits of it; second, because the judgment was for $517.83, and the appeal bond was for only five hundred dollars, which was insufficient to operate as a supersedeas, because it was not double the amount of the judgment; third, because no abstract of the record was served on the respondent

thirty days before the date the case was set for hearing; and, fourth, because the appellants did not serve the respondent with a copy of their brief thirty days prior to the date on which the case was set for hearing in this court.

Bearing upon the first ground of the motion, the parties have filed affidavits and proofs which go to show that within four days after the judgment of May 14, 1901, was rendered, the defendants, Thurmond and Gibson, duly filed a motion for a new trial; that the circuit court did not act on the motion for a new trial at that term, but expected to hold an adjourned term later when it would be acted upon. No adjourned term, however, was held, and the motion was not acted upon until the next regular term. In the interim, while the motion for a new trial was pending, the plaintiff caused its deed of trust to be foreclosed. The notice was signed by the plaintiff and the sheriff of Dunklin county as cotrustees. The sale was had and the property sold to C. L. Keaton for five hundred and sixty-four dollars and twenty-six cents, and a deed was made to him by the plaintiff as trustee, but the sheriff, the cotrustee named in the notice, did not join in it. At the sale, the defendants notified the bidders that there was a motion for a new trial pending in this case.

This is the basis of the claim that the judgment had been executed and satisfied before the appeal was taken, and that appellants had accepted the benefits of it, and the plaintiff invokes the rule laid down by this court in State ex rel. v. Klein, 137 Mo. l. c. 679, and Aull v. Trust Co., 149 Mo. 1.

The rule of law announced in those cases is, that where a party has recovered a judgment and accepts satisfaction of it, he can not afterwards sue out a writ of error or take an appeal to reverse it. [Aull v. Trust Co., 149 Mo. l. c. 15.]

It is manifest, however, that no such condition is present in this case. The appellants recovered no judg-

ment, and have neither received nor accepted any benefits from the judgment that was rendered. The judgment was against them and not in their favor. There were no benefits to them under the judgment. They have taken the steps the law provided, within the time the law allows, to relieve themselves from the judgment.

Moreover, the judgment has never been executed. The judgment ordered a judicial sale of the land. The sale was wholly outside of the judgment, and appears to· have been conducted by the plaintiff alone under a notice signed by it and the sheriff as cotrustees. The so-called deed of trust is embodied in the record and is really a mortgage with power of sale. The sheriff is only authorized to sell in the event the mortgagee is rendered incompetent to act. But, however that may be, the foreclosure of the deed of trust, by the act of the parties, after the judgment in the case, was not a judicial sale, nor an execution or satisfaction of the judgment. The plaintiff had asked a court of equity to foreclosure its deed of trust and the court had extended its aid, and ordered the land sold. This contemplated a sale by the sheriff ex-officio and not as a cotrustee, and the attempted foreclosure by the plaintiff after the judgment was wholly unauthorized and of no legal effect. The mortgage was then merged in the judgment.

There is no merit in the first ground of the motion.

There is likewise no merit in the second ground of the motion. If the bond given was not sufficient under the statute to operate as a supersedeas, the plaintiff could have asked the court to issue an execution to enforce it. But no such thing was done in this case. This, however, had no effect upon the defendants' right of appeal, for the defendants had a right to appeal even without any bond, and the judgment was subject to review on appeal, notwithstanding it had. been enforced and satisfied, pending the appeal.

The third ground of the motion is that no abstract of the record was served on the respondent within thirty days before the case was set for hearing in this court.

The case was set for hearing on January 3, 1905. No showing is made that what purports to be an abstract was not served on respondent at least thirty days prior thereto. But the point is that what purports to be an abstract is in reality a printed copy of the entire record, and it is claimed that it does not comply with the requirements of section 813, Revised Statutes 1899, or with rules 11, 12, 13 and 15 of this court.

The suit is one in equity and comes here upon a certificate of the judgment. What purports to be an abstract of the record contains the pleadings, the plaintiff's mortgage, the letters offered in evidence, the judgment and motions for new trial and in arrest, in full, and the testimony adduced, principally in a narrative form, but to some extent by question and answer. It is a sufficient compliance with the statute and the rules of this court, and is no fuller than required in such a case.

The fourth ground of the motion is that appellants did not serve respondent with their brief thirty days before the day the case was set for hearing. It appears that the printer, who printed appellant's brief, at their direction mailed to respondent a copy of the brief, in the postoffice in St. Louis on the thirtieth of November, 1904, and that it was properly addressed, sealed, with sufficient postage, directed to the counsel for respondent. Counsel for respondent says he did not receive it until December 6, 1904. All the briefs, motions and notices in this case seems to have been served by both parties in the same way. Under the circumstances the brief was properly mailed in time to have reached respondent's counsel in ample time, and the ends of justice would not be subserved by penalizing the appellant

by dismissing the appeal in this case under the circumstances.

The motion to dismiss the appeal is overruled, and the judgment is reversed and the bill dismissed.

All concur.