SAM L. SCHULTZ, RESPONDENT, v. L. R. JONES, APPELLANT.*

Springfield Court of Appeals. September 17, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 1253, p. 1182, n. 92; Attorney and Client, 6CJ, section 175, p. 659, n. 40; section 357, p. 764, n. 36; section 381, p. 776, n. 96; Money Received, 41CJ, section 3, p. 31, n. 11; section 9, p. 34, n. 32; Trial, 38Cyc, p. 1543, n. 69.

*Smith & Zimmermann, John M. Dalton* and *L. R. Jones* for appellant.

*Hal H. McHaney* and *John McAnally* for respondent.

BAILEY, J.—This is suit by the assignee of an attorney's contract to recover one-half of an attorney's fee alleged to have been collected by defendant, a co-counsel. On trial to a jury plaintiff succeeded in obtaining a verdict and judgment in the sum of $305.23, from which judgment defendant has appealed.

In his petition plaintiff alleged that John McAnally (the assignor) and L. R. Jones (defendant) were duly qualified and practicing lawyers of Dunklin county and obtained a contract from one Joe Williams to bring and prosecute a suit in his behalf against one W. R. Hall, for which said attorneys were to receive as compensation one-half the amount recovered in said action; that suit was instituted and judgment rendered against Hall in the sum of $1048; that the judgment was paid to L. R. Jones, April 27, 1926, amounting at the time to $1220.92; that the amount belonging to John McAnally was $305.23; that McAnally assigned all his rights in said judgment to plaintiff; that after the judgment was paid defendant refused to pay plaintiff said sum of $305.23, for which judgment is prayed. The answer was a general denial.

The trial court's action in overruling defendant's demurrers to the evidence is assigned as error. The evidence most favorable to plaintiff discloses that about the year 1918, one Joe Williams employed John McAnally, a lawyer, to bring suit against a certain W. R. Hall and J. P. Hampton and that McAnally was to receive a contingent fee of one-half of whatever amount he recovered; that later, defendant, also an attorney at law, was taken into the case and was to share equally with McAnally in his one-half contingent fee; that a judgment was obtained against Hall and Hampton but on appeal to this court was reversed and remanded (230 S. W. 126) ; that thereafter a new suit was filed and, on change of venue, was tried in Cape Girardeau county where a judgment was obtained in the sum of $1048; that on appeal from an order sustaining a motion for new trial to the St. Louis Court of Appeals, the verdict and judgment was ordered reinstated (261 S. W. 938). This is the judgment upon which the present suit is based. The evidence further tends to show that McAnally assigned his interest in the judgment to plaintiff and that thereafter, about January 26, 1926, the certified copy of the judgment against Hall and Hampton, on file in the circuit clerk's office in Dunklin county, was satisfied on the record by defendant.

It further appears that Hampton was at all times insolvent while this protracted litigation was pending; that Hall, during the same period, had disposed of all his property and, in particular, had conveyed three separate pieces of real estate; that McAnally and defendant had considered ways and means of collecting the judgment against Hall and finally decided, according to McAnally, to sell these three pieces of property under execution on the judgment and then

bring suit to set aside the conveyances made by Hall, as fraudulent. It is conceded that defendant, with the consent of Joe Williams, in whose name the Hall judgment stood, got out an execution against these three pieces of real estate and, at the execution sale, Joe Williams became the purchaser of said property for the nominal sum of $50, the sheriff's deeds being made to him; that defendant, on behalf of Williams, and by virtue of written contracts authorizing him to do so, then brought three separate suits to set aside the three deeds theretofore executed by Hall conveying said real estate. For his services in bringing these suits it was agreed between defendant and Williams that defendant should have one-half of any amount recovered in these suits. It seems that after these three suits were filed by defendant, as attorney for Williams, a compromise was effected by the terms of which the three suits were dismissed and Williams made quitclaim deeds to the properties. In consideration therefor Williams received $483.65 in cash and ten shares of bank stock of the par value of $1000. The actual value of this bank stock is not shown, but sometime after the settlement was made the bank failed and the stock became worthless.

The evidence further shows that in the settlement of the suits to set aside the deeds, defendant and Williams took into consideration the amount of the original judgment against Hall and in addition such other expenses as had been incurred by Williams in connection with the Hall litigation. Williams refused to accept the bank stock, but the stock was taken over by defendant who paid Williams the difference in cash. In doing this it became necessary for defendant to give Williams his check for $334.39. This check was offered in evidence by defendant and notations thereon tend to show the Hall judgment was involved in the settlement.

On the day the settlement was made defendant, at the request of the attorney for Mr. Hall, entered a satisfaction of the certified copy of the Hall judgment on the judgment records of Dunklin county. It is defendant's contention this satisfaction was entered as a mere afterthought and was not involved in the settlement; that the money was paid Williams and the bank stock turned over for the sole purpose of getting the three suits to set aside the Hall deeds dismissed, and that the Hall judgment and expenses in connection with that litigation were used merely as a basis for settlement; that in any event plaintiff would be entitled to recover only McAnally's portion of actual money received by defendant and not the bank stock. There is a further contention that the Hall judgment was of no value but, since defendant made no offer to submit that issue to the jury, it should not now be considered.

In passing upon this demurrer it is our duty to give plaintiff the benefit of all evidence in the case, as well as any reasonable inferences therefrom, favorable to him. There is little direct evidence that de-

fendant actually received any money or property for the purpose of making a settlement of the Hall judgment. The three properties which had been sold under execution and purchased by Williams were held by him in his own right as purchaser and he was at liberty to take such action in regard thereto as he deemed advisable. The Hall judgment was no longer a lien upon that property after such execution sale. Defendant was thereupon employed by Williams to institute suits to set aside the three deeds made by Hall, which he did. The defendants in those suits, insofar as appears, were not interested in the Hall judgment, but certainly were interested in being relieved from the suits to set aside their deeds. They had nothing further to fear from the Hall judgment itself. Thereafter a settlement was effected by which these three suits were dismissed and Williams gave quitclaim deeds to all this property. Under such circumstances, defendant's contention that the money received and the stock transferred, as heretofore set forth, were in settlement of the three suits, seems to be reasonable. On the other hand, there are certain other facts from which, we think, a jury might infer the whole transaction was really in settlement of the Hall judgment. The most outstanding fact is that defendant entered satisfaction of the certified copy of the judgment upon the record the same day the settlement was made. Williams, occupying a dual capacity as purchaser at the execution sale and owner of the Hall judgment, received exactly the amount of the Hall judgment and his expenses, in settlement of the three suits to set aside the deeds. That fact, together with all the other facts and circumstances and especially the act of defendant in actually entering satisfaction of the Hall judgment, made a jury question as to the purpose of the settlement.

Much of the argument contained in the briefs in this case is devoted to the question of whether or not plaintiff has pursued the proper remedy by bringing this action for money had and received. In this connection we think the point has been entirely overlooked that the release and satisfaction of the Hall judgment in no way affected plaintiff's rights. His assignor, McAnally, was an attorney of record in the original suit of Williams against Hampton and Hall, and, together with defendant Jones, continued as attorney of record until final judgment was obtained. Under the statute, McAnally had a lien on that cause of action from the time suit was instituted which lien attached to the judgment, and this lien could not be dissolved by any settlement between the parties, "before or after judgment." [Sec. 690, R. S. Mo. 1919.]

The release or payment of the judgment would therefore not deprive McAnally, or his assignee, of the right to enforce his lien for attorney fees against Hall or his right to follow money or property lawfully due him into the hands of any person. [Lawson v. Telephone Company, 178 Mo. App. 124, 164 S. W. 138.]

We therefore do not consider the fact, that defendant caused the judgment to be satisfied, of consequence in this case, except insofar as it tended to show defendant received the money and bank stock from Mrs. Hall in settlement (partially at least) of the Hall judgment. Of course if such satisfaction of the judgment should have been entered without the knowledge or consent of the client Williams, then under such circumstances defendant, would have been clearly liable to Williams as for money had and received and the fact that he may have received no money whatever would not have relieved him of liability. The theory is that, "Whatever is received as money, in discharge of a money obligation, should be regarded and treated as money." [Houx v. Russell, 10 Mo. 246.]

It is admitted by plaintiff that, as a general rule, an action for money had and received cannot be maintained if the defendant received no money. There are exceptions to this general rule, as shown by the Houx case, supra. It is asserted that this exception applies in the case at bar. To this contention we cannot agree. The relationship between an attorney and client is different from the relationship between two attorneys employed by their common client. The attorney, insofar as his client is concerned, might bind him by any settlement made within the apparent scope of this authority. [Kelly v. Railroad, 113 Mo. App. 468, 87 S. W. 583.]

If, therefore, an attorney makes a settlement of a money judgment he would be liable to his client for money, as heretofore indicated. Is he also similarly liable to his co-counsel? We perceive no reason why he should so be held. He would have had the right to have accepted for his services any property he might have desired, whether wheat, corn, livestock or bank stock. If, without the knowledge or consent of his co-counsel, he should have accepted property, in lieu of money, for his share of a judgment, and had satisfied such judgment on the record, his co-counsel would not have been bound thereby where no partnership relationship existed, as in this case. If such co-counsel should have elected to be bound by such settlement then justice and equity would demand that he recover from his co-counsel only his share of what that co-counsel actually received. The action for money had and received is one in which plaintiff must show that "the defendant has received or obtained possession of the money of the plaintiff, which in equity and good conscience, he ought to pay over." [Bruer v. Dunham, 209 S. W., l. c. 574; St. Louis Sanitary Co. v. Reed, 161 S. W. 315, 179 Mo. App. 164.]

Defendant "can be liable no further than the money he has received, and against that may go into every equitable defense upon the general issue." [Richardson v. Drug Co., 92 Mo. App. l. c. 521.]

The evidence in the case at bar tends to show that defendant, without aid from McAnally, not only performed valuable services in effecting a settlement of the final judgment in the Hall case, but that

he has actually paid out more than $300 in money to Williams in order to bring about that settlement. In return he has received nothing but ten shares of bank stock which, at the time this suit was filed, had proven worthless. We do not think, under the statutes and authorities cited, that plaintiff is in a position to invoke the rule of the Houx case, supra, and require defendant to pay him in money. Plaintiff's instructions submitting such theory must be held erroneous. In so holding we deprive plaintiff of no right which he may have had when the Hall judgment was satisfied.

The point is made that this court is without jurisdiction in this cause for the reason the appeal was not taken within the time prescribed by law. The record shows the appeal was granted on the 12th day of July, 1927. At that time the appeal bond was fixed and appellant was allowed ten days in vacation to file same. The court adjourned August 27, 1927, but the appeal bond was not filed until September 28, 1927. In all other respects the appeal complies with the law. Under the statutes defendant had the right of appeal in this case without bond. [Sec. 1471, R. S. 1919.] The filing of a bond within the time allowed by the court would have stayed execution. [Sec. 1473, R. S. 1919.] The only effect of failure to have the appeal bond filed and approved within the time prescribed by law was to leave defendant's property subject to execution on the judgment pending the appeal. [Mercantile Co. v. Thurmond, 186 Mo. 410, l. c. 428, 85 S. W. 333; Gregory v. Kansas City, 244 Mo. 523, 149 S. W. 466.]

For the reasons stated the judgment should be reversed and remanded. It is so ordered. *Cox, P. J.*, concurs and *Bradley, J.*, not sitting.