CONCORDIA LUMBER COMPANY, INC., Plaintiff/Appellant,

v.

Sid DAVIS, et ux., Defendants/Respondents.

No. WD 36175.

Missouri Court of Appeals, Western District.

July 23, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 27, 1985.

James W. Henry, Martin & Henry, Kansas City, for plaintiff/appellant.

Charles B. Fitzgerald, Warrensburg, for defendants/respondents.

Before BERREY, P.J., and DIXON and KENNEDY, JJ.

BERREY, Ju‹ e.

The jury returned a verdict on defendants' counterclaim in the sum of $1,800.00 and against the plaintiff on its petition on account. From this verdict the plaintiff appeals.

Judgment affirmed.

Defendants purchased 239 yards of carpet from plaintiff for the sum of $3,057.58 which was installed in February, 1979. De-

fendants were not satisfied. They contacted plaintiff about their dissatisfaction "[a]round the 28th of March." They paid $1,535.14 on the account on June 12, 1979. The balance was not paid because defendants could not get plaintiff to come and inspect the carpet and they felt that by withholding part of the monies the plaintiff would inspect the carpet.

Wendell Wuthnow, a seventeen-year employee of E.F. Selby (carpet) Company and currently vice-president and sales manager testified that he inspected the carpet in question about "... four years ago [approximately April, 1980]." He testified he was there to check on the carpet quality and not on the installation. His opinion was the defendants' complaints were not justified. He also noted the installation was above industry standards. On cross-examination he acknowledged observing loose seams along edges of the room but opined it was properly seamed. However, he did acknowledge that one area was not stretched correctly.

Sidney N. Davis, one of the defendants, testified the carpet was purchased in December of 1978 or January of 1979 for $3,057.58 from plaintiff and was installed the week of February 12, 1979, by Paul Dial, an employee of plaintiff. Davis explained that a defect in the kitchen carpet was found and was replaced with new carpet. Davis testified that they made repeated attempts to contact plaintiff's owner/president, Mr. Schnakenberg, including trips to his office. Finally, defendants made contact with him and told him of their complaints that the "... carpet had not been installed correctly" and there was a two-foot split in a heavy traffic pattern. After the carpet had been down about a year Schnakenberg went to defendants' home and viewed it with a representative from the carpet mill. While viewing the premises plaintiff "... admitted that the tape had let go in this one big spot ... ." He also said he would repair it and that the others were not significant. Extra carpet was purchased by defendants to specifically avoid the necessity of placing seams in heavy traffic areas.

Davis testified that, "... for the entire year from the time it was laid until we got Mr. Schnakenberg out there, we kept a throw rug over the entry off of the carport so someone wouldn't trip over a two-foot hole in the seam." Davis had this repaired after plaintiff had failed to do so. Davis testified the carpet was "... pretty bad ...." "Its unrepairable ... ." Mrs. Davis complained about the manner in which the carpet was installed in a closet and at the foot of the stairs. At the latter the installers cut two pieces and neither fit the area. The defendants purchased eleven extra yards of carpet to avoid having seams "... where they don't have to be." As it turned out the seams were "[i]n all of the bad spots.", i.e., the middle of the bathroom door. All three bathrooms had seams in the middle yet all were "... less than twelve feet so there would not have been any reason to have had a seam in the bathroom." Other irregularities existed in the carpet installed.

In November of 1980, the defendants paid another carpet firm to repair a two-foot split, "... because I couldn't live with it anymore." Mrs. Davis complained the carpet was degrading, it mats very badly, spots do not clean up and "... it's just coming apart."

Plaintiff raises two points for review: Point I, Instruction No. 8 was improper as it required the jury to award defendants damages for property they had not paid for, and the same Instruction was improper in that no evidence of market value of carpet was offered by defendants. For Point II, plaintiff alleges that Instruction No. 7 was given in error since the evidence adduced was contrary to the instruction.

Instruction No. 8 was MAI 4.02 and read as follows:

If you find in favor of defendants on defendants' claim for damages, then you must award defendants such sum as you may find from the evidence to be the difference between the fair market value of the defendants' carpet before it was

damaged and its fair market value after it was damaged.

Plaintiff alleges defendants did not pay for carpet, had used it for five years and as such are not entitled to relief. Mr. Schnakenberg, president and general manager of plaintiff's corporation, testified the balance due on the *account* was $2,408.01. Defendant Sid Davis testified the price of the carpet installed was $3,057.50 and that on June 12, 1979, he paid $1,535.14 on the carpet account, withholding payment in full until someone from plaintiff's company came out and looked at the complaints he had on the carpet and its installation.

Defendants purchased all of the materials for construction of their new home, except plumbing fixtures, from the plaintiff. The cost of the carpet was $3,057.50; this was the amount the defendants obligated themselves to pay for the new carpet. Their complaints about its installation began from the first day Mr. Dial, the installer and employee of plaintiff, commenced laying the carpet and installed carpet in the closets contrary to defendants' instructions.

■ The language of an instruction should be so plain that there can be no doubt as to its meaning. *Black v. Kansas City Southern Railroad Company*, 436 S.W.2d 19, 27 (Mo. banc 1968). Certainly, MAI 4.02 as given leaves no doubt as to how defendants' damages are to be determined.

The defendants requested Bob Comfort, the manager of Hobson Carpet Center in Sedalia, view their carpet. He viewed it twice, once before trial and once in October of 1980. Defendants also had the carpet repaired by one of Hobson's employees. Davis testified he spent $30.00 to repair the two-foot split, he was not satisfied with the carpet and wanted it replaced.

Comfort testified he had been in carpet sales since September of 1963 and had worked at Hobson Carpet Center since that date. He had worked as an apprentice installer, an installer, salesman and manager.

Comfort testified the overall installation was very poor. A dining room seam was improperly installed. The toe kicks in the vanity in the dining room were cut short. The bathroom carpets were cut crooked, the carpet behind a stool was cut short of the wall, and there were seams in the middle of the bathroom carpet. The seams were loose between the hall and living room and the steps; "Over all it was a very amateur job."

Comfort testified the problems were caused by poor installation, that the carpet was not properly installed and could not be repaired. To remove the carpet if the house were empty and the furniture removed would cost 50 cents a yard. According to Comfort there was nothing wrong with the carpet quality, it was installed wrong. Comfort testified it would cost $2,500.00 to replace the existing carpet plus the cost of removing the old carpet.

■ MAI 4.02 is the proper instruction to give where there is property damage only. *Wright v. Edison*, 619 S.W.2d 797, 801 (Mo.App.1981). The jury could have reasonably concluded from the substantial evidence presented that the market value of the carpet was $3,057.50 at the time of installation and of no value after the negligent installation.

■ Given the testimony in the instant case, the jury could have reasonably found for the defendants on their counterclaim against the plaintiff, and the verdict of $1,800.00 is supported by the evidence. Point I is denied.

■ For Point II the plaintiff suggests that defendants' Instruction No. 7 is in error and not supported by the evidence. Quite the contrary is true. Instruction No. 7 reads as follows:

Your verdict must be for defendants if you believe:

First, either:

Paul Dial installed the carpet so that the seams were in traffic areas, or Paul Dial installed the carpet so that it did not fit the room, or Paul Dial failed to securely tape the seams of the carpet, and

Second, Paul Dial, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, as a direct result of such negligence, defendants sustained damage.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

There is ample evidence to establish that the carpet had seams in traffic areas that, in fact, were unnecessary especially when the defendants purchased eleven extra yards to avoid such seams. Further, that the carpet was loose and not properly taped at the seams and that the carpet was not properly cut to fit is supported by the evidence.

■ It is true that the jury is free to believe all of the testimony of a witness, none of it, or accept part and reject part. *Rakestraw v. Norris*, 478 S.W.2d 409, 419 (Mo.App.1972). In the circumstances herein set forth the jury could have reasonably found the plaintiff improperly installed the carpet of defendants and such installation rendered the carpet valueless.

Since the instruction complained of was in the alternative or disjunctive there must be evidence to support all submissions else the giving of it is error. *Rakestraw, supra*, at 416, citing *Wolfe v. Harms*, 413 S.W.2d 204, 209–210 (Mo.1967), and *Shelton v. Bruner*, 449 S.W.2d 673, 676 (Mo. App.1969). There being sufficient evidence to establish each claim raised in defendants' Instruction No. 7, *supra*, Point II is ruled against plaintiff.

Judgment affirmed.

All concur.