**FIRST BANK, Respondent,**

v.

**FISCHER & FRICHTEL, INC., Appellant.**

No. SC 91951.

Supreme Court of Missouri, En Banc.

April 12, 2012.

217

R. Thomas Avery, Robert D. Blitz, Jason K. Turk, Blitz, Bardgett & Deutsch LC, St. Louis, for Fischer & Frichtel.

Thomas B. Weaver, Matthew J. Reh, Sara Finan Melly, Armstrong Teasdale LLP, St. Louis, for First Bank.

Brian C. Walsh, K. Lucinda McRoberts, Bryan Cave LLP, St. Louis, for Missouri Bankers Association, which submitted a brief as a friend of the Court.

John L. Davidson, St. Louis, for Business Bank, which submitted a brief as a friend of the Court.

LAURA DENVIR STITH, Judge.

This case involves the question of whether the amount of the deficiency owed by Fischer & Frichtel Inc., a sophisticated commercial debtor, after a foreclosure sale of its property should be measured by the difference between the amount of the unpaid debt and the amount obtained at the foreclosure sale or, instead, by the difference between the amount of the unpaid debt and the fair market value of the property at the time of the foreclosure sale. The trial court submitted an instruction directing the jury to award the difference between the amount of the debt and the property's fair market value but then granted First Bank's motion for a new trial in light of its showing that Missouri case law instead requires the deficiency to be determined by the difference between the debt and the amount received at the foreclosure sale. Fischer & Frichtel appeals.

As discussed below, Missouri common law requires the deficiency to be measured by the amount received at the foreclosure sale, but if the sale price, alone or in combination with other factors, is so inadequate as to raise an inference of fraud, then the foreclosure sale can be voided. Missouri does not permit questions about the adequacy of the foreclosure price also to be raised in the deficiency action. Fischer & Frichtel argues that Missouri's traditional approach leads to unfairness where the debtor is unable to obtain alternative financing in time to submit a bid at the foreclosure sale and the lender is the only bidder. It says this concern has caused other jurisdictions to reject the traditional use of the foreclosure price to measure the deficiency and instead measure it by the fair market value of the property.

Each jurisdiction cited by Fischer & Frichtel that has changed from basing the deficiency on the foreclosure price to basing it on the property's fair market value made that change by statute. Further, the public policy rationales that Fischer & Frichtel offers as the basis to do so do not apply to a sophisticated commercial entity such as itself, which claims neither that it had inadequate notice to obtain alternative financing nor that the foreclosure sale itself had badges of fraud. The trial court's grant of a new trial to First Bank is affirmed, and the case is remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

First Bank is a privately owned company that provides both retail and commercial banking services to its clients. Fischer & Frichtel is a real-estate developer with more than sixty years of experience in the industry. From 2005 to the begin-

ning of 2008, Fischer & Frichtel had hundreds of millions of dollars in revenue and earned tens of millions of dollars in profit. Among its business deals in June 2000 was the purchase of 21 lots in Franklin County for a residential development.

To finance the acquisition, Fischer & Frichtel borrowed $2,576 million from First Bank, in favor of which it executed a deed of trust pledging the lots as collateral for the loan. From 2000 to 2005, Fischer & Frichtel sold 12 of the 21 lots to homebuyers. Each time a lot was sold, Fischer & Frichtel made a principal payment of $126,000 to First Bank, which then released that lot from the deed of trust. Beginning in 2005, the housing market began to decline, and Fischer & Frichtel was unable to sell any of the nine remaining lots in this particular development.

Although the original maturity date on the loan from First Bank to Fischer & Frichtel was July 1, 2003, First Bank extended the maturity date six times. The final mutually agreed maturity date on the loan was September 1, 2008. In April 2008, First Bank and Fischer & Frichtel began to negotiate another extension of the maturity date, but due to the increased risk caused by the declining real estate market, First Bank sought a higher interest rate, a renewal fee, an increase in the amount of principal Fischer & Frichtel would pay on the loan each time it sold a lot, and either a $283,000 cash payment on the principal or a personal guaranty from John Fischer, the owner of Fischer & Frichtel. Fischer & Frichtel believed the new terms were too onerous, and the parties could not agree to an extension.

When the loan matured on September 1, 2008, Fischer & Frichtel was contractually obligated to pay First Bank the remaining principal on the loan, $1,133,875. Fischer & Frichtel chose instead to default on the loan, and First Bank foreclosed on the nine lots remaining unsold that were subject to the deed of trust. The foreclosure sale was held in December 2008, and First Bank acquired the nine unsold lots after making the sole bid of $466,000. Fischer & Frichtel did not bid and does not claim that the foreclosure sale was not properly noticed or conducted.

In November 2008, just prior to the foreclosure sale, First Bank filed suit against Fischer & Frichtel seeking to recover the unpaid principal and interest on the loan. At the trial in January 2010, Fischer & Frichtel presented expert testimony from an appraiser that, although First Bank paid only $466,000, the fair market value of the nine lots at the time of the foreclosure was nearly double that, $918,000. It also showed that internal First Bank documents valued the property at $1,134 million at the time of the default in September 2008. A First Bank employee testified that the bank determined the amount to bid in foreclosure by estimating that, in the declining real estate market, the value of the property to the bank was only $675,000, which should be discounted to $466,000 because First Bank needed to sell the property in bulk, not as individual lots, and the depressed real-estate market made finding a buyer extremely difficult.

At the close of trial, over First Bank's objection, the court instructed the jury that "[i]f you find in favor of [First Bank], then you must award [First Bank] the balance due [First Bank] on the [loan] on the date of maturity, less the fair market value of the property at the time of the foreclosure sale, plus interest." Accordingly, the jury found that the fair market value of the lots was $918,000, the value testified to by Fischer & Frichtel's expert, and that Fischer & Frichtel therefore owed First Bank $215,875 (the difference between the amount of unpaid principal on the loan and the fair market value of the

property at the time of the foreclosure sale) plus $37,500 in interest.

First Bank filed a motion for a new trial, arguing that the damage instruction was contrary to Missouri law because it directed the jury to base the amount of the deficiency on the fair market value of the property at the time of the foreclosure sale instead of on the amount obtained at the foreclosure sale. The trial court agreed and granted First Bank's motion for a new trial. Fischer & Frichtel appealed to the Missouri Court of Appeals, which transferred the case to this Court pursuant to Rule 83.02 to address the issue of how to determine the amount of the deficiency after a foreclosure sale.[1]

## II. STANDARD OF REVIEW

"Generally, an appellate court will be more liberal in upholding a trial court's decision to grant a new trial than it will be if the trial court denies a new trial." *Meyer v. McGarvie*, 856 S.W.2d 904, 907 (Mo.App.1993). "However, a trial court's authority to grant a new trial is discretionary only as to questions of fact, not as to matters of law." *Id.* "Whether a jury was instructed properly is a question of law that this Court reviews *de novo.*" *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 766 (Mo. banc 2010); *Harvey v. Washington*, 95 S.W.3d 93, 97 (Mo. banc 2003) ("This Court reviews *de novo,* as a question of law, whether a jury was properly instructed"). It is error for jury instructions not to follow the Missouri Approved Instructions (MAI), and "[s]uch errors are presumed to prejudice the defendant unless it is clearly established ... that the

error did not result in prejudice." *State v. Westfall,* 75 S.W.3d 278, 284 (Mo. banc 2002). Where, as here, there is no applicable MAI, the instruction will be reviewed to determine "'whether the jury [could] understand the instruction and whether the instruction follows applicable substantive law by submitting the ultimate facts required to sustain a verdict.'" *Seitz v. Lemay Bank and Trust Co.,* 959 S.W.2d 458, 462 (Mo. banc 1998), *quoting Brown v. Van Noy,* 879 S.W.2d 667, 672 (Mo.App. 1994). If this Court finds that the instruction is erroneous, it must then determine whether the error misdirected, misled or confused the jury, resulting in prejudicial error and justifying the grant of a new trial. *Harvey,* 95 S.W.3d at 97; *Kuzuf v. Gebhardt,* 602 S.W.2d 446, 449 (Mo. banc 1980).

## III. THE FORECLOSURE SALE PRICE IS THE MEASURE OF A DEFICIENCY

There are two general approaches to reviewing claims that the amount received for a property at a foreclosure sale is insufficient.

One approach is to allow the foreclosure sale price to be used in determining the deficiency only if the debtor does not challenge the adequacy of the foreclosure sale price in the deficiency action. If there is such a challenge, states that use this approach rely on a variety of standards, usually set by statute, for determining whether to reject the foreclosure sale price in favor of fair market value as a measure of the deficiency, ranging from whether there is a difference between the two prices,[2] to

---

1. In light of this Court's holding on the proper measure of a deficiency, it is unnecessary to reach the issues raised concerning whether the jury correctly determined the amount of interest and whether the jury should have been instructed on Fischer & Frichtel's affir-

mative defenses of commercial frustration and lack of good faith and fair dealing.

2. *See, e.g., Utah Code Ann.* § 57–1–32 (West 2012) ("The court may not render [a deficiency] judgment for more than the amount by

whether the foreclosure sale price is sub-stantially lower than the fair market val-ue,[3] to whether the foreclosure sale price is so much lower than the fair market value that it shocks the conscience.[4]

Fischer & Frichtel argues that Missouri should adopt the most liberal of these standards—that recommended by section 8.4 of the Restatement (Third) of Property (1997)—and always allow debtors to pay only the difference between the debt and the fair market value of the property at the time of the foreclosure if the debtor challenges the foreclosure price.[5]

◼ Missouri and many of the other states in which the method of measuring deficiencies is governed by the common law traditionally have followed a different approach, however. These states require a debtor to pay as a deficiency the full difference between the debt and the fore-closure sale price.[6] They do not permit a debtor to attack the sufficiency of the fore-closure sale price *as part of the deficiency proceeding* even if the debtor believes that the foreclosure sale price was inadequate.

◼ This does not mean Missouri does not give a debtor a mechanism for attack-ing an inadequate foreclosure sale price. Rather, a debtor who believes that the foreclosure sale price was inadequate can bring an action to void the *foreclosure sale* itself. *Roberts v. Murray*, 232 S.W.2d 540, 546 (Mo.1950); *Judah v. Pitts*, 333 Mo.

which ... the indebtedness ... exceeds the fair market value of the property as of the date of the sale"); WIS. STAT ANN. § 846.165 (no "judgment for deficiency [shall be] ren-dered, until the court is satisfied that the fair market value of the premises has been credit-ed on the mortgage").

3. *MICH. COMP. LAWS ANN. § 600.3280 (West 2012)* (showing that "the amount bid was substantially less than its true value ... shall constitute a defense to [a deficiency] action and shall defeat the deficiency judgment against [the debtor] either in whole or in part"); TENN.CODE ANN. *§ 35–5–118* (in order to use the fair market value as the measure of a deficiency, the debtor must show the "prop-erty sold for an amount materially less than the fair market value of [the] property at the time of the foreclosure sale")

4. *R. K. Cooper Const. Co. v. Fulton*, 216 So.2d 11, 13 (Fla.1968) ("A shockingly inadequate sale price in the foreclosure proceeding can be asserted as an equitable defense and the trial judge has the discretion and duty to inquire into the reasonable and fair market value of the property sold. ... ").

5. The Restatement (Third) of Property states in relevant part on this point:

§ 8.4 Foreclosure: Action For A Deficien-cy
(a) If the foreclosure sale price is less than the unpaid balance of the mortgage obli-gation, an action may be brought to recover a deficiency judgment against any person who is personally liable on the mortgage obligation in accordance with the provi-sions of this section.
(b) Subject to Subsections (c) and (d) of this section, the deficiency judgment is for the amount by which the mortgage obli-gation exceeds the foreclosure sale price.
(c) Any person against whom such a recov-ery is sought may request in the proceeding in which the action for a deficiency is pend-ing a determination of the fair market value of the real estate as of the date of the foreclosure sale.
(d) If it is determined that the fair market value is greater than the foreclosure sale price, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any liens on the real estate that were not extinguished by the foreclosure, exceeds the sale price.
*Restatement (Third) of Property § 8.4 (1997).*

6. *See, e.g., Rhode Island Depositors' Econ. Prot. Corp. v. Macomber*, 658 A.2d 511, 511–12 (R.I.1995); *Fitch v. Buffalo Fed. Sav. and Loan Ass'n*, 751 P.2d 1309, 1312–13 (Wyo. 1988); *New England Sav. Bank v. Lopez*, 227 Conn. 270, 630 A.2d 1010, 1015 (1993) (pow-er of sale only); *Standard Bank & Trust Co. v. Callaghan*, 177 Ill.App.3d 973, 977–78, 127 Ill.Dec. 186, 532 N.E.2d 1015 (1988).

301, 62 S.W.2d 715, 720 (1933). If the sale stands, then it has been thought fair to require the debtor to pay any deficiency remaining based on the foreclosure sale price. *Drannek Realty Co. v. Nathan Frank Inc.*, 346 Mo. 187, 139 S.W.2d 926, 928 (1940). Since *Roberts,* the standard for voiding a foreclosure sale has been reaffirmed by numerous Missouri court decisions.[7]

Fischer & Frichtel does not claim that this is not the current state of Missouri law, nor does it offer any reason why it failed to follow this approach and file an action attacking the validity of the foreclosure sale due to the inadequacy of the foreclosure sale price. Instead it argues that Missouri's standard for setting aside a foreclosure sale is so high that a debtor cannot realistically hope to meet it.

■ Missouri permits the debtor to void a properly noticed and carried out foreclosure sale only by showing that "the inadequacy ... [of the sale price is] so gross that it shocks the conscience ... and is in itself evidence of fraud." *Cockrell v. Taylor,* 347 Mo. 1, 145 S.W.2d 416, 422 (1940); *Judah,* 62 S.W.2d at 720. This is the predominant standard used by courts in determining whether to void the foreclosure sale, but what is sufficient to "shock the conscience" of a court seems to vary greatly. Some states, such as Oregon and Wisconsin, have found sale prices of more than half the fair market value sufficient to shock the conscience and set aside the sale, *Teachers' Retirement Fund Ass'n of Sch. Dist. No. 1, Multnomah Cnty. v. Pirie,* 150 Or. 435, 46 P.2d 105, 106–109 (1935); *Gumz v. Chickering,* 19 Wis.2d 625, 121 N.W.2d 279, 281–82 (1963), while others uphold sales for less than 40 percent of the fair market value. *Cromer v. De Jarnette,* 188 Va. 680, 51 S.E.2d 201, 204 (1949); *Hurlock Food Processors, Inv. Assoc. v. Mercantile–Safe Deposit and Trust Co.,* 98 Md.App. 314, 633 A.2d 438, 452–54 (1993). Missouri's standard for proving that a foreclosure sale "shocks the conscience" is among the strictest in the country; more than one Missouri case has refused to set aside a sale that was only 20 to 30 percent of the fair market value because of Missouri's historical practice of requiring an inference of fraud in addition to a sale price that "shocks the conscience." *Cockrell,* 145 S.W.2d at 422; *Judah,* 62 S.W.2d at 720; *Harlin v. Nation,* 126 Mo. 97, 27 S.W. 330, 331 (1894).

Fischer & Frichtel argues that this standard for setting aside a foreclosure sale is so high that it is only an illusory remedy for an unfairly low sale price and that because the foreclosure process inherently produces artificially low sale prices, it almost inevitably leads to windfalls for lenders. Fischer & Frichtel suggests that the foreclosure process is unfair in part because cash must be offered for the property by the bidder. This is a problem for the ordinary bidder, particularly a homeowner or small business owner, because the statutory minimum time period between notice of foreclosure and the actual sale is often less than a month,[8] an insufficient amount of time to allow potential bidders to secure financing.

Fischer & Frichtel notes that the lender does not have this financing problem, as it does not have to pay with cash, but instead simply may deduct the purchase price from the amount of principal the borrower

---

7. *See, e.g., Boatmen's Bank of Jefferson Cnty. v. Community Interiors, Inc.,* 721 S.W.2d 72, 78 (Mo.App.1986); *Mueller v. Simmons,* 634 S.W.2d 533, 536 (Mo.App.1982); *Carondelet*

*Sav. & Loan Ass'n v. Boyer,* 595 S.W.2d 744, 747 (Mo.App.1980).

8. In Missouri, the minimum notice period is 20 days. § 443.310, RSMo 2000.

owes. Because realistically the lender often will be the sole bidder, it can buy the foreclosed property for far less than market value, sell the property at a profit and then collect a deficiency from the borrower based on the below-market value it paid for the property.[9] The lender receives both the benefit of buying the property for less than fair market value and also of only having to reduce the deficiency it is entitled to by the below fair market price paid at the foreclosure sale.

First Bank offers factual and policy rebuttals to many of these arguments.[10] The policy debate presented by the parties may explain why so many states have chosen to deal with this issue by statute, rather than by the common law, as still is the case in Missouri. *Cf. Powell v. Am. Motors Corp.*, 834 S.W.2d 184, 189–90 (Mo. banc 1992) (holding that the balancing of competing public policies is best left to the legislature).

Even more importantly here, however, nearly all of the problems that Fischer & Frichtel alleges concern *not the fairness of the deficiency determination itself but the fairness of the foreclosure sale price* due to lack of sufficient notice to obtain alternative financing or other bidders. Despite this, Fischer & Frichtel does not ask this Court to reexamine the strict standard for voiding a foreclosure sale, as one might expect in light of the settled Missouri law requiring inadequacy of the foreclosure sale price to be examined in the foreclosure sale itself.

This is surprising in one sense, for setting aside an unfair sale, rather than allowing it to stand unchallenged and then considering whether to adjust how to determine the deficiency, would avoid many of the policy concerns raised by both parties about forcing one or the other to accept an undue or unknown risk in not knowing whether the foreclosure price will remain standing in a later deficiency action. Moreover, this Court has not reexamined the standard for voiding a foreclosure sale since its decision in *Roberts*, 232 S.W.2d at 546, decided more than 60 years ago, nor did this Court appear to consider at that time whether its very stringent standard for setting aside a sale was out of step with that used in other states.

9. For example, assume that a lender loans the borrower $100,000; the borrower, having paid none of the principal, defaults; and the lender forecloses. The property is appraised at $130,000. Nevertheless, the lender is the only bidder at the sale and buys the property for $60,000. The lender can seek a deficiency against the borrower and will recover $40,000, the difference between the sale price at foreclosure and the amount of principal left on the loan. The lender then can sell the house for its appraised value of $130,000 and will gain $170,000 from foreclosing on a loan of only $100,000.

10. First Bank suggests that this Court should continue to follow the foreclosure sale price approach because changing to the fair market value approach will increase lending costs by shifting all the risk in the foreclosure process onto the lender. Under the fair market value approach, regardless of what happens to the market, the borrower knows it will owe a deficiency based solely on the fair market value at the time of the foreclosure sale. By contrast, if the lender buys the property, which Fischer & Frichtel agrees usually is the case, it holds all the risk, so that if property prices decline and the lender cannot sell the property for the fair market value at foreclosure, it incurs a loss. Furthermore, under the fair market value approach, the lender may feel forced to buy property likely to bring in less than the market price because it knows that it only will receive a deficiency for the fair market value of the property, regardless of how little it recovers in the foreclosure sale. First Bank also argues that the fair market value approach will increase costs by forcing lenders to determine the fair market value of every property they foreclose and by causing litigation over the true "fair market value" of the property.

It may be that Fischer & Frichtel advocates an alternative approach because it did not file a timely challenge to the foreclosure sale and could not have met the traditional standard for setting aside a foreclosure sale had it done so.[11] Or perhaps it is that the policy reasons raised by Fischer & Frichtel for lowering the burden required to show inadequacy of the foreclosure sale price principally apply to individuals and small businesses that have no realistic ability to bid themselves, not to a sophisticated business entity such as Fischer & Frichtel, which has not shown or alleged that it did not have adequate notice of the foreclosure sale, that the sale was not fairly conducted or that it did not have the financial means to offer an alternative bid. So far as the record shows, Fischer & Frichtel simply made a strategic choice not to bid, not to attack the amount received as inadequate under the traditional standard for setting aside a foreclosure sale and not to ask this Court to adopt a less onerous standard.[12] Fischer & Frichtel's suggested alternative would make those decisions irrelevant.

Moreover, Fischer & Frichtel has not identified any jurisdiction that has rejected the foreclosure sale price approach in favor of the fair market value approach based on the common law.[13] All of the

11. A review of the record shows that the foreclosure sale price of $466,000 was more than half the $918,000 fair market value the property determined by the jury, and no other indicia of fraud or misconduct are shown. These facts would not support voiding the foreclosure sale under current Missouri law. *Judah v. Pitts*, 333 Mo. 301, 62 S.W.2d 715, 720 (1933).

12. This may have been a wise strategic decision, as First Bank marketed the property for $675,000, the amount at which First Bank valued it before discounting it because of the need to sell it in bulk, and, as of the trial, had not received a single bid.

13. Independent research indicates that the Supreme Court of Tennessee never has addressed squarely whether the foreclosure sales price is the proper measure of a deficiency, although in *Holt v. Citizens Cent. Bank*, 688 S.W.2d 414, 416 (Tenn.1984), it held that absent fraud or other misconduct a properly held foreclosure sale cannot be voided based on an inadequate price. After *Holt*, the Tennessee court of appeals issued contradictory opinions as to whether the foreclosure sale price was conclusive in deficiency proceedings. *Compare McDill Columbus Corp. v. Lakes Corp.*, No. 03A01–9112CV00445, 1992 WL 115576 at *2 (Tenn.Ct.App.1992) (finding *Holt* demanded that foreclosure sale price be used to determine deficiency) *with Lost Mountain Dev. Co. v. King*, No. M2004–02663–COA–R3–CV, 2006 WL 3740791 at *5–6 (Tenn.Ct.App.2006) (finding the reasoning of *Holt* precluded setting aside the foreclosure but did not apply to deficiency judgments). The opinion that allowed evidence of the fair market value to be used in determining the amount of the deficiency judgment did not purport to change the common law, however, but instead cited numerous older cases for the proposition that the foreclosure sales price had never been the conclusive measure of the amount of a deficiency. *Lost Mountain*, 2006 WL 3740791 at *5–7. In 2010, the Tennessee legislature passed a statute mandating that the fair market value be the measure of any deficiency if a property is sold at foreclosure for materially less than its fair value. *Tenn. Code Ann. § 35–5–118.*

In Florida, no statute requires that fair market value be used to determine the amount of any deficiency, but the Florida Supreme Court switched from using the sale price at foreclosure to using fair market value based on a statutory change in foreclosure procedure, whereby instead of a judge having to confirm every foreclosure sale, the foreclosure would automatically become final if, after 10 days, no party objected. *R. K. Cooper Const. Co v. Fulton*, 216 So.2d 11, 13 (Fla. 1968); *see also Fla. Stat. § 702.02(5) (1955) (repealed 1972).* The court reasoned that because under the statute the court had no equitable power to determine whether the price paid at foreclosure was fair, it needed to exercise that power in deficiency proceedings by assessing the fair market value of the property. *Cooper*, 216 So.2d at 13.

cited states that follow the fair market value approach either have always done so or have made the change to that approach based on statute.[14]

While the fact that this matter is not addressed by statute does allow this Court greater discretion than otherwise would be the case, "[u]nder the doctrine of stare decisis, 'a decision of this [C]ourt should not be lightly overruled, particularly where . . . the opinion has remained unchanged for many years.'" *Sw. Bell Yellow Pages, Inc. v. Dir. of Revenue*, 94 S.W.3d 388, 390 (Mo. banc 2002), *quoting Novak v. Kansas City Transit, Inc.*, 365 S.W.2d 539, 546 (Mo. banc 1963).

Here, the public policy reasons that form the basis of Fischer & Frichtel's argument for modification of the more than century-old practice of using the foreclosure sale price have no application to a sophisticated debtor such as it. *New York Store Mercantile Co. v. Thurmond*, 186 Mo. 410, 85 S.W. 333, 336 (1905). While the foreclosure sale price was barely more than 50 percent of the fair market value later determined by the jury, the lender gave cogent reasons for its lower bid due to the depressed real estate market and the bulk nature of the sale, as of trial the lender had not been able to sell the property, and Fischer & Frichtel has not ar-gued it could not have purchased the property at the foreclosure sale (or indeed thereafter while the property was still on the market for $675,000, a good deal less than Fischer & Frichtel says is its fair market value).

This is not a case, therefore, in which to consider a modification of the standard for setting aside a foreclosure sale solely due to inadequacy of price or whether a change should be made in the manner of determining a deficiency where the foreclosure price is less than the fair market value.

## IV. CONCLUSION

For the reasons stated, the judgment of the trial court awarding a new trial is affirmed.

RUSSELL, BRECKENRIDGE and FISCHER, JJ., and BURKEMPER, Sp.J., and PARRISH, Sr.J., concur; TEITELMAN, C.J., dissents in separate opinion filed. PRICE and DRAPER, JJ., not participating.

RICHARD B. TEITELMAN, Chief Justice, dissenting.

I respectfully dissent. The purpose of a damage award is to make the injured party whole without creating a windfall. Accordingly, in nearly every context in which a party sustains damage to or the loss of a

---

**14.** For cases which traditionally have used this approach, *see, e.g., Lake Hillsdale Estates, Inc.* v. Galloway, 473 So.2d 461, 466 (Miss. 1985); *Tr. of Washington–Idaho–Montana–Carpenters–Employers Ret. Trust Fund v. Galleria P'ship*, 239 Mont. 250, 780 P.2d 608, 616–17 (1989); *Vermont Nat. Bank v. Leninski*, 166 Vt. 577, 687 A.2d 890, 892 (1996). *For states adopting this approach by statute, see, e.g.,* ARIZ.REV STAT. ANN. § 33–314 (2012); CAL. CIVIL PROC.CODE § 580(b) (West 2012); COLO.REV.STAT. ANN. § 38–38–106(6) (West 2012); CONN. GEN.STAT. § 49–14(a); IDAHO CODE ANN. § 6–108 (West 2012); ME REV. STAT TIT 14, § 6324 (West 2012) (only applies if mortgagee is purchaser); MICH. COMP. LAWS ANN. § 600.3280 (West 2012); MINN STAT. ANN. § 582.30 (West 2012); NEB.REV STAT. § 76–1013 (West 2012); NEV.REV.STAT. ANN § 40.459 (West 2012); N.J. STAT. ANN. § 2A:50–3 (West 2012) (does not apply to certain commercial loans); N.Y. REAL PROP. ACTS LAW § 1371(2) (McKinney 2011); N.C. GEN.STAT. ANN. § 45–21.36 (West 2012) (only applies if mortgagee is purchaser); N.D. CENT.CODE ANN. § 32–19–03 (West 2012); OKLA. STAT. ANN. TIT. 12, § 686 (West 2012); S.C.CODE ANN. § 29–3–700 (2012); S.D. CODIFIED LAWS § 21–47–16 (West 2012); TEX. PROP CODE ANN § 51.003 (West 2012); UTAH CODE ANN. § 57–1–32 (West 2012); WASH REV.CODE ANN § 61.12.060 (West 2012); WIS. STAT. ANN. § 846.165 (West 2012).

property or business interest, Missouri law measures damages by reference to fair market value. Yet in the foreclosure context, Missouri law ignores the fair market value of the foreclosed property and, instead, measures the lender's damages with reference to the foreclosure sale price. Rather than making the injured party whole, this anomaly in the law of damages, in many cases, will require the defaulting party to subsidize a substantial windfall to the lender. Aside from the fact that this anomaly long has been a part of Missouri law, there is no other compelling reason for continued adherence to a measure of damages that too often enriches one party at the expense of another. Consequently, I would hold that damages in a deficiency action should be measured by reference to the fair market value of the foreclosed property.

The underlying deficiency judgment is nothing more than a means of calculating First Bank's damages for Fischer & Fritchel's breach of a contract that was secured by the foreclosed property. The issue is simply assigning a value to the foreclosed property to calculate First Bank's actual damages fairly. Missouri law recognizes that "[t]he goal of awarding damages is to compensate a party for a legally recognized loss ... [and a] party should be fully compensated for its loss, but not recover a windfall." *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.,*

155 S.W.3d 50, 54 (Mo. banc 2005). In other words, the fundamental purpose underlying the law of damages is to make the injured party whole by monetary compensation. *BMK Corp. v. Clayton Corp.,* 226 S.W.3d 179, 197 (Mo.App.2007).

When a party sustains loss of or damage to a marketable interest, the surest way to make the injured party whole and avoid a windfall is to simply include fair market value in the damages calculation. Presumably, this is the reason that, when possible, most common law damages calculations use fair market value as a baseline for awarding damages. For instance, when the seller of real estate brings suit for breach of contract against the buyer, the "appropriate measure of damages is the difference between the contract price and the market value of the property on the date the sale should have been completed." *Shirley's Realty, Inc. v. Hunt,* 160 S.W.3d 804, 807 (Mo.App.2005). Similarly, a seller's measure of damages for a buyer's breach of a contract for the sale of land with a structure on it is the difference between the purchase price and the fair market value of the property on the date of breach. *Wooten v. DeMean,* 788 S.W.2d 522, 527–28 (Mo.App.1990). There are numerous other examples in which damages are calculated with reference to the fair market value of the property or interest that is lost or damaged.[1] Unless the facts

1. *Groves v. State Farm Mut. Auto. Ins. Co.,* 540 S.W.2d 39, 43 (Mo. banc 1976) (the general measure of damages for injury to personal property is the difference between its reasonable market value before and after the damage); *Coffman v. Powell,* 929 S.W.2d 309, 312 (Mo.App.1996) ("[t]he proper measure of damages for the conversion of personal property is the fair market value at the time and place of the conversion"); *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988) (appropriate measure for damages in a fraudulent misrepresentation case is the difference

between the fair market value of the property received and the value if the property had been as represented); *King v. City of Independence,* 64 S.W.3d 335, 340 (Mo.App.2002), overruled on other grounds, (damages for a permanent nuisance are measured by the change in the property's fair market value as a result of the injury); *Concordia Lumber Company, Inc. v. Davis,* 696 S.W.2d 851, 852–53 (Mo.App.1985)(proper measure of damages for breach of warranty is generally the difference between the fair market value of the property before and after the breach).

of the case clearly dictate otherwise, fair market value is the touchstone.[2]

In contrast, Missouri's current common law rule for calculating damages in a deficiency proceeding is inconsistent with the underlying purpose of awarding damages. Consistent with common knowledge, Missouri case law long has recognized that "[t]he conditions of a foreclosure sale are not conducive to achieving a price that reflects the fair market value of property." *Shirley's Realty, Inc.*, 160 S.W.3d at 808. Fair market value presupposes a willing seller who is free to accept or reject offers as he or she sees fit. A foreclosure sale usually does not involve a willing seller, and the conditions for purchase are subject to time and financing constraints not present in a sale on the open market. Furthermore, in most cases, the purchaser and sole bidder at a foreclosure sale is the foreclosing lender.[3] For these reasons, "it is well known that property, when sold at a forced sale, usually does not bring its full value" and, instead, "has the potential of bringing only a fraction of the fair market value." *Id.* (quoting *Smith v. Snodgrass*, 747 S.W.2d 743, 747 (Mo.App.1988)). It is plainly evident that the practical effect of calculating a foreclosure deficiency by reference to the foreclosure sale means that the secured lender benefits from an often substantial windfall by purchasing the property at a discount from fair market value while also obtaining an inflated deficiency judgment. This windfall is subsidized by the already financially distressed debtor.

The principal opinion posits two primary justifications for continued adherence to the current common law rule. First, the principal opinion notes correctly that Missouri common law has, for decades, provided that a foreclosure deficiency is measured by reference to the foreclosure sale price. While the passage of time can confirm the validity and wisdom of a common law rule, it can also demonstrate its shortcomings. The test of time is a double-edged sword. Therefore, when the common law is demonstrably inconsistent with common knowledge and experience, this Court has exercised its constitutional authority to modify the common law accordingly. For instance, this Court abolished interspousal tort immunity because it "belies reality and fact to say there is no tort when the husband either intentionally or negligently injures his wife" or vice versa. *Townsend v. Townsend*, 708 S.W.2d 646 (Mo. banc 1986) (quoting *Brawner v. Brawner*, 327 S.W.2d 808, 819–820 (Mo. banc 1959) (Hollingsworth, J., dissenting)).[4] Similarly, continuing to measure a

**2.** For instance, some categories of property are rarely, if ever, bought and sold on the open market. In those cases, cost of replacement is the appropriate measure of damages because it places the injured party in as good a position as if its property had not been taken or destroyed. *Leonard Missionary Baptist Church v. Sears, Roebuck and Co.*, 42 S.W.3d 833, 837 (Mo.App.2001), citing *Reorganized School Dist. No. 2 v. Missouri Pac. R. Co.*, 503 S.W.2d 153, 159 (Mo.App.1973). *See, e.g., State ex rel. State Highway Comm'n v. Mount Moriah Cemetery Ass'n*, 434 S.W.2d 470 (Mo.1968) (fair market value not proper measure of damages for cemetery land).

**3.** First Bank concedes the fact that the foreclosing lender is often the purchaser.

**4.** There are numerous other examples in which this Court has modified or abolished flawed common law rules. *See, Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 111 (Mo. banc 1996) (adopting a "change in the common law" by requiring that punitive damage claims must be supported by a clear and convincing standard of proof); *Helsel v. Noellsch*, 107 S.W.3d 231, 233 (Mo. banc 2003) (abolishing the tort of alienation of affection because there was no plausible reason to retain the cause of action); *Thomas v. Siddiqui*, 869 S.W.2d at 743 (Mo. banc 1994) (Robertson, J., dissenting) (abolishing the tort

foreclosure deficiency by reference to the foreclosure sale price also "belies reality and fact" because it ignores common knowledge, common experience and the underlying purpose of the law of damages. In this case, the passage of time does not confirm the common law rule; it fully illustrates its shortcomings.

Second, the principal opinion asserts that each jurisdiction cited by Fischer & Fritchel that has changed from basing the deficiency on the foreclosure sale price to the fair market value made the change by statute. However, as this Court has noted, "[I]t is neither realistic nor consistent with the common law tradition to wait upon the legislature to correct an outmoded rule of case law." *Abernathy v. Sisters of St. Mary's*, 446 S.W.2d 599, 605 (Mo. banc 1969). The issue before this Court is not whether our legislature will or will not pass a statute. The issue is whether this Court should continue to adhere to a rule that it established and that is demonstrably inconsistent with the goal of fully compensating the injured party and avoiding a windfall. By using the fact that other states made the change legislatively as a reason for this Court to avoid the change, the principal opinion implicitly frames the issue in this case as one of process. This case is not about the process of change; it is about the justification for change. The case is about whether this Court's common law rule is consistent with common knowledge, common experience and the general precepts of the common law of damages. It is not. Because this issue is squarely before this Court as a matter of common law, the fact that numerous states have legislatively adopted a fair market valuation is relevant and further buttresses the conclusion that the current common law rule is deficient.

In sum, there is no reason, except for tradition, to perpetuate this anomaly in Missouri law and continue measuring the deficiency with reference to the foreclosure sale price. Instead, this Court should adopt the valuation method recommended by section 8.4 of the Restatement (Third) of Property (1997), which requires debtors to pay the difference between the principal balance and the fair market value at the time of the foreclosure sale if the debtor challenges the foreclosure price.[5] If the legislature disagrees, it can act accordingly and pass a statute for the governor's approval. It is through this process that the judicial, legislative and executive branches

---

of criminal conversation); *Abernathy v. Sisters of St. Mary's*, 446 S.W.2d 599 (Mo. banc 1969) (abrogating the rule of charitable immunity); *O'Grady v. Brown*, 654 S.W.2d 904 (Mo. banc 1983) (overruling *State ex rel. Hardin v. Sanders*, 538 S.W.2d 336 (Mo. banc 1976), and establishing the standing of a parent to sue for the death of a viable fetus); *Steggall v. Morris*, 363 Mo. 1224, 258 S.W.2d 577, 581 (1953) (overruling *Buel v. United Rys. Co.*, 248 Mo. 126, 154 S.W. 71 (1913), and holding that a child can recover for prenatal injuries).

5. First Bank argues that changing to the fair market value approach will place all the risk in the foreclosure process onto the lender. This argument is not persuasive. By focusing only on the foreclosure process, First Bank deflects consideration of the risk management techniques available to lenders when the loan is made. A lender compensates for risk by charging an interest rate that is set both by the financial markets and by the lender's assessment of the borrower's creditworthiness. The lender also manages risk by appraising the fair market value of the property to ensure that the loan is adequately secured. Changing to a fair market value approach certainly would lessen the lender's chance of a large windfall and would mean only that First Bank, like the borrower, is losing or gaining money based on fair market value of property. The risk of loss is part of the risk of lending. That risk of loss should not be borne solely by the borrower and then amplified by measuring the deficiency by reference to the foreclosure sale price.

of our government resolve legal issues.[6] In the meantime, this Court should alter the common law measure of damages in a deficiency action so that our common law reflects our common knowledge, common experience and the common law of damages, which, when possible, defines damages with reference to fair market value.

I would reverse the judgment sustaining First Bank's motion for a new trial and order the trial court to enter judgment consistent with the jury's finding that the fair market value of the foreclosed property was $918,000 and that Fischer & Fritchel therefore owed First Bank a deficiency of $215,875.

---

**6.** For instance, in *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99 (Mo. banc 1985), the Court abolished common law remittitur. In *Jones v. State Highway Commission*, 557 S.W.2d 225, 228 (Mo. banc 1977), the Court abrogated sovereign immunity. The legislature re-established both doctrines by statute.