

# Missouri Court of Appeals

## Southern District

### Division One

ARVEST BANK,

    Defendant/Appellant,

vs.

EMERALD POINTE, LLC,
TIMBER RIDGE AT EMERALD
POINT, LLC, GARY W. SNADON TRUST,
PATSY A. SNADON,
and PATSY A. SNADON TRUST,

    Plaintiffs/Respondents.

No. SD36959

Filed: January 13, 2022

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable R. Tiffany Yarnell, Judge

**REVERSED AND REMANDED WITH DIRECTIONS**

Arvest Bank appeals from the trial court's judgment in favor of Emerald Point, LLC ("Emerald Pointe"), Timber Ridge at Emerald Point, LLC, Gary W. Snadon Trust, Patsy A. Snadon, and Patsy A. Snadon Trust (collectively "Respondents"). In two points relied on, Arvest Bank asserts that the trial court erred in voiding the March 29, 2016 foreclosure sale. Finding merit to Arvest Bank's Point I, we grant the same, reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## Facts and Procedural History

Patsy Snadon and Gary Snadon (the "Snadons") were the original owners of Emerald Pointe. Emerald Pointe was an upscale, lakefront and lake view residential development on Table Rock Lake in Hollister, Missouri, named the "Emerald Pointe Subdivision. The Emerald Pointe Subdivision covered 600 acres with 1,100 lots and 300 condominiums, and was divided into twelve "phases." As relevant here, Phase II consisted of 18.04 acres, and was platted for 46 residential building lots.

This case arises from a loan the Respondents received from Arvest Bank for the development of "Phase II" of the Emerald Pointe Subdivision. Respondents later defaulted, and Arvest Bank foreclosed and purchased "Phase II" at auction. Arvest Bank filed an action to obtain a deficiency judgment against Respondents, and Respondents filed a counterclaim against Arvest Bank to void the foreclosure sale. Respondents' Counterclaims were severed from the deficiency petition and tried separately.

A bench trial commenced on December 7, 2018, and continued on March 8, 2019, on Respondents' Counterclaims. Before trial commenced on December 7, the parties announced they had entered into a "Joint Stipulated Statement of Facts for Trial" and presented the following stipulated statement to the trial court:

> 1. On or about June 12, 2006, Emerald Pointe, LLC executed and delivered to Arvest Bank a Promissory Note dated June 12, 2006 ("Note"), for $1,450,000 payable to Arvest Bank to purchase commercial property. A true copy of the Note is marked as Trial Exhibit 51.
>
> 2. On or about June 12, 2006, Emerald Pointe, LLC and Patsy A. Snadon executed and delivered a Deed of Trust in favor of Arvest Bank to secure the Note. A true copy of the Deed of Trust is marked as Trial Exhibit 52.
>
> 3. Timber Ridge at Emerald Pointe, LLC, Gary W. Snadon Trust dated 6/19/2013, Patsy A. Snadon Trust dated 6/19/2013, and Patsy A. Snadon absolutely and unconditionally guaranteed the debts of Emerald Pointe, LLC by execution and delivery to Arvest Bank their Guaranty Agreements (the "Guaranty Agreements").

True copies of the Guaranty Agreements are marked as Trial Exhibits 53, 54, 55 and 56.

4. Jerry Jeschke ("Jeschke") is a real estate appraiser specializing in commercial property in Stone and Taney Counties of Missouri and is certified by the State of Missouri as a general real estate appraiser.

5. Jeschke performed appraisals for Arvest Bank involving the Emerald Pointe subdivision, (hereinafter referred to as "Phase II").

6. In 2014 when Jeschke performed the 2014 appraisal, it was for the purpose of a loan renewal for Emerald Pointe.

7. That as of August 20, 2014, Jeschke was of the opinion that the market value for Phase II in its as-is condition was $2,430,000. A true copy of Jeschke's Appraisal dated September 11, 2014 is Trial Exhibit 5.

8. The foreclosure sale in March 2016 of Phase [II] for a sales price of $575,000 was approximately 23.5% of the appraisal value in August 2014 of $2,430,000.

9. On February 10, 2016 Jeschke's appraisal value for Phase II in an as-is condition was $1,300,000.

10. The February 10, 2016 appraisal was prepared for the foreclosure.

11. Jeschke delivered the report with the market value of $1.3 million to Arvest.

12. The bid accepted at the foreclosure sale in March 2016 of $575,000 is 44.2% of the appraised value of $1.3 million contained in Jeschke's written appraisal.

13. After Arvest requested Jeschke to review additional information, Jeschke went back and came to a new opinion as to appraised value.

14. Jeschke's revised appraised value was lowered to $860,000.

15. Approximately a week or maybe two weeks passed between Jeschke's appraised value of $1.3 million and appraised value of $860,000.

16. Arvest accepted Jeschke's appraisal of $860,000.

17. The difference in value between $1.3 million and $860,000 of $440,000 is 33.8%.

18. The terms of the Note were last modified by a Debt Modification Agreement dated June 15, 2015. A true copy of this Debt Modification Agreement is Trial Exhibit 57.

19. Emerald Pointe, LLC defaulted in making the required payments on the Note.

20. Emerald Pointe, LLC, Timber Ridge at Emerald Pointe, LLC, Gary W. Snadon Trust, Patsy A. Snadon Trust and Patsy A. Snadon were provided notice of acceleration and payoff balance due on December 17, 2015. A true copy of the Notice is Trial Exhibit 58.

21. Emerald Pointe, LLC, Timber Ridge at Emerald Pointe, LLC, Gary W. Snadon Trust, Patsy A. Snadon Trust and Patsy A. Snadon failed to make payment after notice of acceleration and payoff balance was provided.

22. When Emerald Pointe, LLC, Timber Ridge at Emerald Pointe, LLC, Gary W. Snadon Trust, Patsy A. Snadon Trust and Patsy A. Snadon defaulted in making the required payments on the Note, Jeschke was asked to perform another appraisal on Phase II in its as-is condition for the foreclosure.

23. On February 10, 2016 Jeschke was of the opinion that the market value for Phase II in its as-is condition was $1,300,000. A true copy of Jeschke's Appraisal dated February 10, 2016 is Trial Exhibit 7.

24. After reviewing additional evidence, Jeschke had a new opinion as to the market value of Phase II, which was $860,000. A true copy of Jeschke's revised Appraisal dated February 10, 2016 is Trial Exhibit 8.

25. Emerald Pointe, LLC, Timber Ridge at Emerald Pointe, LLC, Gary W. Snadon Trust, Patsy A. Snadon Trust and Patsy A. Snadon were provided a Notice of Trustee's sale pursuant to the Note and Deed of Trust on March 2, 2016. A true copy of the Notice of Trustee's Sale is Trial Exhibit 12.

26. The real estate described in the Deed of Trust was offered for sale at public vendue [sic] to the highest bidder for cash on March 29, 2016.

27. Arvest Bank was the highest bidder for $575,000. A true copy of the Trustee's Deed is Trial Exhibit 13.

On December 9, 2020, the trial court entered its "Amended Findings of Fact and Conclusions of Law and Judgment." The trial court found that the foreclosure sale price of $575,000 "shock[ed] the conscience" and was void as inadequate, awarded judgment in favor of

Respondents on Counts I and II, and ordered the foreclosure sale of March 29, 2016 to be voided, and re-vested title to Emerald Pointe.

On December 15, 2020, Arvest Bank filed a "Motion for New Trial," which was overruled by the trial court. This appeal followed.

In two points relied on, Arvest Bank argues:

      I.     The trial court erred in voiding the March 29, 2016 foreclosure sale because Missouri's shocks-the-conscience standard was not met, in that the trial court's sole finding of 'something more' than mere sale price did not involve any irregularity in the sale itself.

      II.     The trial court erred in voiding the March 29, 2016 foreclosure sale because mere inadequacy of sale price is insufficient, in that the bid amounts of either 23.5% or 44.2% require 'something more' under current Missouri law, and Emerald Pointe's request to change Missouri's standard was—and should be—rejected.

### Standard of Review

"The circuit court's judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously apples the law." ***Doyle v. Tidball***, 625 S.W.3d 459, 463 (Mo. banc 2021) (quoting ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976)). This case involves some stipulated facts and some facts derived from a contested bench trial, resulting in a mixed question of fact and law. Our review is *de novo* on matters of statutory interpretation,[1] and "the trial court's legal conclusions and its application of law to the facts." ***Empire Dist. Elec. Co. v. Scorse as Trustee Under Trust Agreement Dated November 17, 1976***, 620 S.W.3d 216, 224 (Mo. banc 2021) (internal quotation and citation omitted).

---

[1] ***Missouri State Conference of National Association for the Advancement of Colored People v. State***, 607 S.W.3d 728, 731 (Mo. banc 2020).

## Analysis

### *Point I: "Something More" Standard*

In its first point relied on, Arvest Bank argues that the trial court erred in voiding the March 29, 2016 foreclosure sale because "Missouri's shocks-the-conscience standard was not met," because "the trial court's sole finding of 'something more' than mere sale price did not involve any irregularity in the sale itself."

As relevant here, the trial court made the following findings:

> 48. Emerald Pointe and the other Plaintiffs have indeed exercised their right under Missouri common law to attack the foreclosure sale price as inadequate. Emerald Pointe asks this Court to recognize the modern changes that have been brought to bear in foreclosure sales nationally as a result of the real estate market financing crisis of 2007-2008 and overall real estate financing practices. As a result, Emerald Pointe asserts that the Missouri Supreme Court forecasted a willingness to change Missouri law in this area in its holding in [*First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216 (Mo. banc 2012)] where it held 'Fischer & Frichtel does not ask this Court to reexamine the strict standard for voiding a foreclosure sale . . .' Id. at 222. Emerald Pointe is asking this Court to reexamine the strict standard.

> 49 The Court . . . finds that even under the current common law in Missouri the Bank's foreclosure sales price of $575,000 does 'shock the conscience' and is void as inadequate. The Court was provided with evidence of three values on the same subject property by the same appraiser, Jerry Jeschke, over the course of seventeen (17) months. These values were $2,430,000 as of September 11, 2014, $1,300,000 as of February 10, 2016 and $860,000 also in February, 2016.

> 50. The final appraisal of $860,000 is not given any probative value by the Court in determining market value because the Bank, by its employee Thomas, suggested to Jeschke that his appraisal of $1.3 million was 'overly optimistic' and thereby improperly steered the appraiser Jeschke towards reporting a predetermined result of a lower value. The Court finds this suggestion of coming to a lower value was contrary to, and violated, standards established by USPAP.[2] Therefore, the Court does not consider and places no value on the appraised value of $860,000. [Appx. 9-10].

---

[2] All of the appraisals performed by Jeschke for Arvest Bank were governed by the Uniform Standards of Professional Appraisal Practice ("USPAP"). Under the USPAP, Jeschke was required to be unbiased, and to not favor or promote the cause or interest of the client, one's self, or another in performing appraisals.

. . . .

53.    Under Missouri law[,] the Court finds that under either value, $1,300,000 or $2,430,000, the foreclosure sales price does shock the conscience of this Court.  The method used by the Bank to document its file with an appraisal in February, 2016 that violated USPAP standards is the additional 'something more' that even under Missouri's strict foreclosure standards violates common law.

As our Supreme Court indicated in *First Bank*:

Missouri's standard for proving that a foreclosure sale "shocks the conscience" is among the strictest in the country; more than one Missouri case has refused to set aside a sale that was only 20 to 30 percent of the fair market value because of Missouri's historical practice of requiring an inference of fraud in addition to a sale price that "shocks the conscience."

*First Bank*, 364 S.W.3d at 221.  "[I[nadequacy of consideration alone will not justify setting aside a foreclosure sale that was fairly and lawfully conducted, without fraud or partiality and with full opportunity for competitive bidding."  *Am. First Fed., Inc. v. Battlefield Ctr., L.P.*, 282 S.W.3d 1, 9 (Mo.App. E.D. 2009) (internal quotation and citation omitted).

Here, there was no allegation by Emerald Pointe (or finding by the trial court) that there was fraud or partiality that impacted the opportunity for competitive bidding.  Significantly, there is no suggestion that any of the appraisals obtained by Arvest Bank impacted the bids received at auction.[3]

Emerald Point suggests that

the evidence and its reasonable inferences when viewed in a light most favorable to the judgment support the finding that the First February 10, 2016 Appraisal[] was involved in the trustee's sale because it supported the trustee's decision to sell Phase [II] in one sale as opposed to selling the 42 separately platted tracts in separate foreclosure sales.

_____

[3] On May 27, 2016, Arvest Bank listed the property for sale through a realtor.  The property was on the market for 52 days, but the only offer made was for $550,000, which was less than the amount obtained at the foreclosure auction.

7

It concedes, however, that "[a]t trial[,] Emerald Pointe did not specifically challenge that the trustee abused his discretion in selling Phase [II] *en masse* as opposed to parcels."[4] This issue was waived by Respondents because the challenge was not presented to the trial court to consider.

Emerald Point also urges us to reject governing Supreme Court precedent in *First Bank*, 364 S.W.3d 216, and adopt the RESTATEMENT (THIRD) OF PROPERTY § 8.4. It suggests that "Missouri's current standard is unfair and is contrary to how damages are calculated and should therefore be changed[,]" and that "the time is right for Missouri common law to change." What Emerald Point ignores is that we are "an error-correcting court, not a policy making court." *State ex rel. Schmitt v. Schier Company, Inc.*, 594 S.W.3d 245, 256 (Mo.App. S.D. 2020) (internal quotation and citation omitted).[5] "This Court is compelled to follow the precedent set forth by our Supreme Court." *Johnson v. State Farm Mutual Automobile Insurance Company*, 604 S.W.3d 875, 881 (Mo.App. S.D. 2020).

We reject Emerald Pointe's request to disregard controlling precedent. Arvest Bank's Point I is granted. The trial court's judgment is reversed and remanded for further proceedings consistent with this opinion.

Our treatment of Arvest Bank's Point I is dispositive, and we need not address its Point II.

William W. Francis, Jr., P.J. – OPINION AUTHOR

Jeffrey W. Bates, J. – CONCURS

Elizabeth V. Rohrs, Special Judge – CONCURS

---

[4] *See First Bank*, 364 S.W.3d at 223 n.12 (noting the bank's need to discount and "sell [] in bulk" after foreclosing).

[5] Moreover, as our Supreme Court observed in *First Bank*, 364 S.W.3d at 222, "[t]he policy debate presented by the parties may explain why so many states have chosen to deal with this issue by statute, rather than by the common law, as still is the case in Missouri." Notably, in *First Bank*, the appellants asked the Supreme Court to adopt section 8.4 of the RESTATEMENT (THIRD) OF PROPERTY (1997), and the Supreme Court did not do so.